CHARLES M. HOSMER *vs.* HENRY C. FULLER.

Suffolk.  November 13, 1896. — May 19, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Broker's Commission — Contract — Action.*

Evidence that B., the owner of land, told A. that all over $7,500 " that you get for the land, or find a customer, you may have "; that A. afterwards offered the land for sale at $8,500 to certain persons, one of whom was C., who were about to form a corporation ; that A. continued his negotiations with them, especially with C., for the sale, and notified B. that C. was the person with whom he was negotiating, and named the price ; that a corporation was afterwards formed by these persons ; that B. subsequently sold the land, through a lawyer, to the corporation, for $8,500 ; and that the check given in payment was signed by C. as treasurer, — will warrant a finding for A. in an action against B. to recover $1,000 for his services in procuring a purchaser for the land.

CONTRACT, upon an alleged agreement that, if the plaintiff would procure a purchaser for the defendant's land, he would pay him $1,000 for his services. At the trial in the Superior Court, before *Hammond,* J., the jury returned a verdict for the plaintiff ; and the defendant alleged exceptions. The facts appear in the opinion.

*J. W. Cummings,* (*E. A. McLaughlin* with him,) for the defendant.

*W. H. Baker,* for the plaintiff.

FIELD, C. J.   The only exception is to the refusal of the presiding justice to direct a verdict for the defendant.   It is plain that there was evidence for the jury that the defendant in July or August, 1892, agreed with the plaintiff that "all over $7,500 that you [the defendant] get for the land, or find a customer, you [the defendant] may have"; and that the plaintiff found some of "the gentlemen that were associating themselves together, or were going to, for the formation of" a brewery company in Lowell, and offered the land to them for sale.   The exceptions recite that the plaintiff testified, among other things, as follows:  "That a week or ten days afterwards [that is, after July or August, 1892] he called on Mr. Donovan and talked with him about the sale of the land; that he told Donovan the land was up there for sale, and it was adapted for brewing purposes; that Donovan asked him what the price was, and he told him $8,500; that Donovan replied that he knew the land; that it had been offered to him time and time again for a jackknife; that the plaintiff suggested it was a pretty good scheme to buy it, and that he and Donovan made an appointment to meet later on; that after this interview with Donovan the plaintiff notified the defendant that he had put the price on the land at $8,500, and that Donovan was the man with whom he was negotiating, and that the defendant said, 'All right, all right'; that on the 29th of August, the plaintiff met Mr. Donovan and a Mr. Broadbent at the Lowell Trust Company's office; that they had some conversation about going ahead and forming a brewing company, and that Broadbent and Donovan came to some sort of an arrangement; that he notified Donovan in the presence of Broadbent that the price of the land was $8,500, and that Donovan assented to it; that on the 13th day of September following, the plaintiff went to Lowell in response to an invitation of Donovan, and met him, a Mr. Bartlett (who was one of the owners of the land), and Mr. Harrigan; that they all went over to the land and looked it over; that they seemed pleased with it; that Donovan said that they were going to try the water to see whether it was suitable for brewery purposes, and they asked the plaintiff to locate where he thought was the best place to drive

the well, so as to test the water, and if it proved to be what was wanted they would not have to dig another well; that the plaintiff did this; that Mr. Donovan said that if the water was all right they would take the land, and that the brewing company was to be organized under the laws of West Virginia; that at that time there was no brewery in the city of Lowell, and that the corporation was going to be formed as soon as they decided the question of water; that after this meeting with Donovan he again saw the defendant and told him that Donovan had been out to see the land and had expressed himself satisfied and was going to have the water tested, and that in witness's opinion there was no doubt but Donovan was going to take it, and the defendant said, 'All right,' and that he (plaintiff) told defendant that the water analysis was all right for brewery purposes; that he saw Donovan for the last time with reference to this land some time about the 1st of November, 1892; that before he first met the defendant, the plaintiff knew that Broadbent and Donovan contemplated the erection of a brewery at Lowell (Broadbent to be brewer), and they mentioned the names of Mr. Joyce and Mr. Curran as going to take hold with them; . . . that he called upon Donovan because he was recommended to him as the man who would be likely to take hold of the enterprise of starting a brewery, and that Donovan agreed to go ahead and raise the money to put into the brewery; that he was to raise one hundred or one hundred and fifty thousand dollars if necessary; that he, plaintiff, went to live at Philadelphia in the latter part of October, 1892, and did not return to Lowell again until the latter part of April or the beginning of May, 1893; that the last time he had any talk with the defendant was in the fall of 1892, somewhere about September; and that in the latter part of February, 1893, he wrote to the defendant from Philadelphia, and also wrote to the defendant at other times."

The plaintiff also put in evidence a copy of the articles of incorporation of the Consumers' Brewing Company under the laws of West Virginia, in which it appears that the capital stock was to be $300,000 of which 650 shares of $100 each were subscribed for; Donovan, Joyce, Curran, and Maurice A. Hanagan subscribing each for 100 shares, one Berry and George M. Harrigan subscribing each for 100 shares, and one Coffey subscribing for 50 shares. The agreement of these persons to become a corporation

is dated January 26, 1893, and the certificate of incorporation is dated February 15, 1893.

The defendant testified, among other things, " that in December, 1892, Mr. E. B. Quinn, at that time an attorney in Lowell, came to see him about the purchase of the land for the Consumers' Brewing Company, and that Mr. Quinn made the bargain with him for the sale of the real estate to that company ; that he made the purchase for $8,500 ; . . . that he received $8,500 in cash, in payment for the land ; that he did not know that Mr. Donovan had ever been to see the land before he, the defendant, had talked with Mr. Quinn ; that all the negotiations for the sale of the land to the Consumers' Brewing Company were had with Mr. Quinn ; that the plaintiff never mentioned Mr. Donovan in connection with the brewery or the brewing business ; that he first learned that Mr. Donovan was an incorporator in the Consumers' Brewing Company in May or June, 1893 ; and that was the first he knew about Donovan having anything to do with it ; . . . that he had no talk with Mr. Joyce and Mr. Coffey until the deeds were passed ; . . . that Quinn, the lawyer who represented the Consumers' Brewing Company or the syndicate, first saw the witness about the land in December, 1892 ; that Mr. Hosmer met him at one time and told him that he had been over to see the land with a party, but did not mention the name of the party ; that Mr. Hosmer, up to the time the deeds were passed, wrote him letters, which letters were destroyed by the witness accidentally ; that from December, 1892, to March 21, 1893, he negotiated with no one else except Mr. Quinn concerning the same property ; that Mr. Joyce was present when the check for $8,500 was paid him by Mr. Quinn ; and that Mr. Quinn was from a month to six weeks looking up the title of this land prior to March, 1893."

The check given in payment for the land was on the Lowell Trust Company, of which Donovan was president, but it was signed by Donovan as treasurer and Joyce as president, apparently as officers of the Consumers' Brewing Company. The deed to the Brewing Company was dated March 21, 1893, and the consideration expressed in it was $8,500. The plaintiff also put in evidence a postal card addressed to him by the defendant, as follows :

"March 11, 1893.

"Dear Sir, — The reason you have not heard from me is, I have nothing to say. I am waiting now for a final decision in the matter in question. Have expected to get something definite every day, but have not yet reached that point. H. C. Fuller."

From this evidence the jury properly could find that the Consumers' Brewing Company was the corporation Donovan intended to form when he talked with the plaintiff about buying the land; that Donovan's intention was either to buy the land for the company or to have the company buy the land, and that the defendant in selling the land to the company knew he was effecting a sale as a result of the negotiations which the plaintiff had had with some of the principal incorporators. The jury also properly could find from the evidence that the plaintiff's efforts were the efficient cause of the purchase by the company. See *Desmond* v. *Stebbins,* 140 Mass. 339; *Gleason* v. *Nelson,* 162 Mass. 245; *Dowling* v. *Morrill,* 165 Mass. 491.

*Exceptions overruled.*