HERBERT H. HOLTON *vs.* JOHN SHEPARD, JR.

Suffolk.    December 14, 1934. — September 11, 1935.

Present: RUGG, C.J., CROSBY, FIELD, & LUMMUS, JJ.

*Broker,* Commission.

Statements by RUGG, C.J., as to various circumstances in which a broker becomes entitled to a commission for procuring a purchaser of property.

A broker hired to procure a purchaser of a store could not have been found to be the efficient cause of a sale by the owner, and was not entitled to a commission, where the evidence showed at most that following negotiations for a purchase between the broker and a corporation which he interested in the matter, the owner executed a sealed contract with a second corporation, not interested in the matter by the broker, whereby the store was to be sold to and paid for by a holding company to be organized by the second corporation, to which was to be issued all the stock of the holding company; that such contract was carried out; and that as a result of the efforts of the second corporation after the making of such contract the first corporation participated in the transaction to the extent of helping to finance the purchase and of joining in the underwriting for the sale of the holding company's stock: the sale was not made to the first corporation, the only prospective purchaser procured by the broker.

CONTRACT. Writ dated November 1, 1928.

The action was tried in the Superior Court before *Donahue,* J. The verdict for the plaintiff was for $122,752.

*A. C. Burnham,* (*G. S. Fuller* with him,) for the plaintiff.

*F. P. Garland,* (*J. DeCourcy* with him,) for the defendant.

RUGG, C.J. This is an action of contract to recover a broker's commission in connection with the sale in 1928 of the Shepard stores, so called, owned and conducted by the defendant in Boston and Providence. The declaration consists of three counts. It is alleged in the first count that there was an agreement between the parties that, if the plaintiff should produce a customer to whom the defendant should ultimately make or cause to be made a sale of the Shepard stores, or the capital stock of the corporations owning and operating these stores, upon terms satisfactory to the defendant, the latter would pay to the plaintiff reasonable compensation, and that there has been performance of the agreement by the plaintiff. In the second count it is alleged that there was the same agreement as in the first count and performance by the plaintiff in procuring Edmund Seymour & Co., Inc., to whom the defendant made the sale, although nominally the sale was made to Sawyer Brothers, Incorporated. The third count is upon an account annexed for services performed by the plaintiff at the request of the defendant in procuring the sale of the properties. It is further alleged in each count

that the liability of the defendant to the plaintiff is $100,000 plus interest. Although not so alleged, it is plain that all the counts are for the same cause of action. The defendant's answer contains a general denial as to each count. It is averred as an additional defence that the plaintiff forfeited all right to a commission from the defendant, if he had any connection with the matters alleged in his declaration, by reason of having executed an agreement in writing with Edmund Seymour & Co., Inc., for a commission to be paid to him by it touching the matters alleged in the declaration, and that this agreement was unknown to the defendant. The defendant rested at the close of the plaintiff's evidence and presented a motion for a directed verdict in his favor on each count. This motion was denied subject to the defendant's exception. The case was submitted to the jury under leave reserved and a general verdict returned for the plaintiff. Subsequently, upon motion and by order of the trial judge, a verdict was entered for the defendant under the leave reserved. G. L. (Ter. Ed.) c. 231, § 120. The plaintiff's exception to the entry of this verdict raises the question of law to be considered.

The burden of proof rested upon the plaintiff to establish the allegations of his declaration. The test to determine the correctness of the action of the trial judge in ordering the entry of a verdict for a defendant under leave reserved is whether the evidence in its aspect most favorable to the plaintiff could rightly be found to support the contentions essential to the maintenance of his cause of action. *Curtis* v. *Comerford*, 283 Mass. 589, 591. *Buono* v. *Cody*, 251 Mass. 286, 289. *Niland* v. *Boston Elevated Railway*, 208 Mass. 476. *Salem Trust Co.* v. *Deery*, 289 Mass. 431, 433. *Sheffer* v. *Rudnick, ante,* 205, 206.

The parties are in substantial accord to the effect that a contract was made as alleged in the declaration. The contract was not in writing. The defendant promised to pay the plaintiff a commission, the amount of which also is not in controversy, if he produced the purchaser to whom the defendant acting in his own behalf should sell his business. The plaintiff was not the agent of the defendant, but was

working in his own interest and at his own expense. The plaintiff was not employed to make a sale or a contract for the sale of the properties. He had no authority to commit the defendant in any respect. He had no exclusive right to try to procure a customer. The defendant might deal with anyone whom he chose in making a sale. There must be evidence in the record to support a finding that the plaintiff performed that agreement in order to entitle him to go to the jury. *John T. Burns & Sons Inc.* v. *Hands,* 283 Mass. 420, 422. *Elliott* v. *Kazajian,* 255 Mass. 459, 461. *Glendon* v. *Pyne,* 275 Mass. 528.

Where the sale is made to a customer produced by the broker, he may be found to be the efficient cause although not personally conducting all the negotiations leading to the transfer. *Hall* v. *Grace,* 179 Mass. 400. *French* v. *McKay,* 181 Mass. 485. *Johnstone* v. *Cochrane,* 231 Mass. 472. *Provost* v. *Burgin,* 287 Mass. 273. The terms proposed by the broker and those finally adopted in the sale need not be identical. *Stuart* v. *Valsom,* 249 Mass. 149, 152. The broker may make out his case if he produces the customer to whom the sale is made without termination of his employment, *Walsh* v. *Grant,* 256 Mass. 555, 558, *Elliott* v. *Kazajian,* 255 Mass. 459, 461–462, and no new forces enter into the transaction which break the causal relation between his efforts and the sale, *Gleason* v. *Nelson,* 162 Mass. 245, 250, *Delaney* v. *Doyle,* 267 Mass. 171, 176–177, *Glendon* v. *Pyne,* 275 Mass. 528, 530, *John T. Burns & Sons Inc.* v. *Hands,* 283 Mass. 420, 422.

The evidence consisted of the oral testimony of the plaintiff, the defendant, his son, his attorney, and one Sawyer, president of Sawyer Brothers, Incorporated, together with correspondence and other written instruments. No representative of the Seymour company testified.

There was testimony tending to show these facts: The defendant, through ownership of stock in corporations, was the proprietor of the Shepard stores. After the contract was made, the plaintiff tried without success to interest a number of different persons in the purchase of these stores, keeping the defendant informed of his efforts. Fi-

nally, early in 1927, he began negotiations with Edmund Seymour & Co., Inc., hereafter called the Seymour company, a corporation with offices in New York City. No one except the plaintiff directed the attention of the defendant to that corporation. By March, 1927, the plaintiff had aroused the interest of that corporation in purchasing the Shepard stores. The plaintiff informed the defendant promptly, and thereafter corresponded with him reporting progress and requesting data concerning the business operations of his stores. These data the defendant did not furnish. He expressed an unwillingness to sell except for cash, or to participate in a transfer consisting of stock in corporations. The basis of these conferences by the plaintiff was that the annual profits of the Shepard stores were about $500,000, and that the sale price demanded by the defendant was about $5,000,000. The plaintiff gave the defendant full information as to the financial resources and business responsibility of the Seymour company. He caused a letter by the president of a New York bank to be written to the defendant assuring him of the capacity of the Seymour company to handle a transaction of that size. He outlined to the defendant a brief skeleton of a Seymour plan to form and finance a corporation to take over the Shepard stores, rather than to operate them directly. Negotiations were suspended during the summer of 1927 because of the absence of a member of the Seymour company, but efforts of the plaintiff were renewed in the autumn and continued until the end of December. On November 14, 1927, the plaintiff received a letter from the Seymour company saying, in reply to one written by himself, that that concern was interested in the Shepard stores but that no statements of earnings, balance sheets or other necessary information had been furnished and there was nothing to work on. The plaintiff sent this letter to the defendant and received no reply from him, but later talked with him concerning it. No such information as was thus requested was given to the plaintiff. Concerning this interview, the plaintiff testified that the defendant "told him not to concern himself longer with this proposition. He told Mr.

Shepard that the Seymour group wanted to know that everything was all right and if Mr. Shepard would go on. . . . Shepard told him he would." The plaintiff so reported to the Seymour company.

There was evidence that the defendant, in the latter part of 1927, began to deal with Sawyer Brothers, Incorporated, a Massachusetts corporation hereafter called Sawyer, with which a contract to sell the Shepard stores was finally made. That corporation was engaged in the investment and brokerage business in Boston. Sawyer, its president, testified that, although not a direct representative, he had close business relations with the Seymour company through mutual buying and selling of securities. The testimony of Sawyer and the defendant was to the effect that Sawyer became interested in the purchase of the Shepard stores through one Fellows, with whom the defendant had had dealings concerning a customer and who claimed to have an option on the Shepard stores, pronounced by the defendant to be fictitious. This evidence was introduced by the plaintiff and was uncontradicted. If it might have been disbelieved, such disbelief has no tendency to prove that Sawyer became a party to the sale through the Seymour company. *Cruzan* v. *New York Central & Hudson River Railroad*, 227 Mass. 594, 597. *Boice-Perrine Co.* v. *Kelley*, 243 Mass. 327, 330. *Marquandt* v. *Boston Young Women's Christian Association*, 282 Mass. 28, 31. The plaintiff does not contend that he produced Sawyer as a purchaser. The time when Sawyer began negotiations with the defendant appears to have been late in 1927, and there was testimony that by the end of December they had progressed rather definitely toward a final understanding. The defendant and Sawyer entered into a written contract of sale under seal on February 25, 1928. It recited in considerable detail the method of carrying out the transaction. It required a deposit of $100,000 by Sawyer, to be returned when the sale was made, which was to be on April 30, 1928. The deposit was made. The date of performance was extended twice, the final date being June 1, 1928. In brief, the contract of February 25, 1928, provided

that the defendant was to cause the incorporation of a com-
pany to take over the business of the Shepard stores, and
Sawyer was to organize a holding company which would
buy all the capital stock of the Shepard company at a price
based upon the valuation of the assets of the stores, to be
paid for in notes of the holding company; and Sawyer
undertook also to pay certain debts of the Shepard stores
approximating $1,000,000 in amount. On the date of the
performance of the contract of February 25, 1928, be-
tween Sawyer and the defendant, there came into the
hands of a corporation under the control of the defendant
about $1,000,000 and notes valued at $3,800,000 issued by
the holding company organized by Sawyer; the business
of the Shepard stores was transferred to or became the
property of the holding company; all the stock of the
holding company was issued to Sawyer. The price paid
to the defendant was thus approximately $4,800,000.

The testimony of Sawyer was that he tried to interest
other bankers in his plan, that the Seymour company twice
declined to come into the transaction, but on May 21, 1928,
entered into an agreement in writing with Sawyer whereby
they shared in underwriting the stock of the holding cor-
poration organized by Sawyer, and all issued to and held
by Sawyer. By its terms the Seymour company was to
join with Sawyer in underwriting twenty-seven thousand
five hundred shares of class A stock of the holding company
at a price to yield that company $1,045,000. There was a
stipulation as to the division of one hundred thousand
shares of common stock of the holding company of no par
value. It was agreed, also, that $1,000,000 should be pro-
vided for the close of the transaction with the defendant,
before offering the securities for sale to the public. It was
a condition of this underwriting agreement that it was to
be effective between the parties when and if Sawyer pre-
sented "satisfactory confirmed syndicate participations for
at least nine thousand shares of the stock to be sold to the
public." On the date of the performance of the contract
between Sawyer and the defendant, a cashier's check for
$1,000,000 to the order of Sawyer was indorsed by Sawyer

and delivered to a corporation owned by the defendant. That check was furnished by the New York bank through which the Seymour company generally operated; as security for it, Sawyer and the Seymour company signed a note secured by pledge of the preferred and common stock of the holding company, all of which had been issued to Sawyer, and of $100,000 put up by Sawyer. Sawyer testified that the Seymour company only loaned the use of its name on a joint note. Early in June a letter was sent to various brokers, signed by the Seymour company and Sawyer, soliciting purchases of the preferred stock of the holding company upon terms stated. As purchases were made, the proceeds were applied to the indebtedness on the note to the New York bank, and the preferred stock of the holding company was released for delivery. Sawyer testified that the Seymour company did not incur liability on the $3,800,000 notes given by the holding company for the balance of the purchase price. The evidence does not make clear the extent of the interest of the Seymour company in the holding company. Its capitalization was twenty-seven thousand five hundred shares of preferred and one hundred thousand shares of common stock. Sawyer, who alone testified on this point, said that of the common stock he received forty-two thousand five hundred shares and the Seymour company thirty-two thousand five hundred shares, and the rest went in other directions. Sawyer and the Seymour company, according to their agreement and the advertising sent out by them, joined in underwriting the preferred shares. Sawyer testified that the entire capital stock of the holding company was sold to and paid for by his company; that his company did not sell all its holdings; that all the Seymour company did was to aid his corporation to finance the purchase of the stores and to help in distributing the stock to the extent of nine thousand shares at $45 a share; that the note for $1,000,000 to the New York bank was paid within ninety days of its date out of moneys received from the sale of stock in the holding company, and that at that time he had from twelve thousand to fifteen thousand

shares of class A stock; and that the Seymour company sold all of its stock.

The question is whether, on this evidence, a finding would have been warranted that the plaintiff produced a customer to whom the defendant sold the Shepard stores. The only person produced by the plaintiff was the Seymour company. The contract for sale was made by the defendant, not with the Seymour company, but with Sawyer. That contract was under seal. It cannot rightly be held that, in executing this contract in its own name under seal, Sawyer, a corporation organized under the laws of this Commonwealth, was acting as agent for the Seymour company, a New York corporation. *Marsch* v. *Southern New England Railroad,* 230 Mass. 483, 498. *Brighton Packing Co.* v. *Butchers' Slaughtering & Melting Association,* 211 Mass. 398, 403. The testimony of all those having knowledge of the transaction was to the effect that the Seymour company was not the purchaser, but that Sawyer was the purchaser. The documents and instruments of transfer were exclusively between the defendant and his corporations and Sawyer and the holding company organized by it. The transactions between Sawyer and the Seymour company do not constitute the Seymour company a purchaser from the defendant of the Shepard stores. They took place about three months after the contract of sale between Sawyer and the defendant. They show that the Seymour company helped Sawyer (1) to borrow about one fifth of the purchase price paid by Sawyer to the defendant, which was shortly repaid out of sales of stock of the holding company organized by Sawyer, and (2) by joining in an underwriting agreement to sell stock of that holding company. These transactions were not the equivalent of a sale by the defendant to the Seymour company. If these constituted a sale, it was by Sawyer and not by the defendant. *Hollyday* v. *Southern Farm Agency,* 100 Md. 294. *Harris* v. *Esperanza Mining Co.* 91 N. J. Eq. 163, 184. Where a third person intervenes as a purchaser with an understanding of transfer to the customer produced by the broker, *Gormley* v. *Dangel,* 214 Mass. 5, 7, or where such customer

forms a corporation to take the conveyance, *Shapira* v. *Union Trust Co.* 306 Penn. St. 35, 42, or where others become associated in the purchase with such customer as the important factor, *Dexter* v. *Campbell*, 137 Mass. 198, *Hosmer* v. *Fuller,* 168 Mass. 274, *Willard* v. *Wright*, 203 Mass. 406, or where a sale is made behind the back of the broker, *Burchell* v. *Gowrie & Blockhouse Collieries, Ltd.* [1910] A. C. 614, the broker is entitled to his commission. There is nothing in this record to support a finding that Sawyer came in contact with the defendant or became the purchaser through any effort by the plaintiff. According to all the testimony, Sawyer was the dominant personality in the purchase of the Shepard stores. Even if the testimony of Sawyer and the defendant be discredited, the proposition that the Seymour company was the purchaser from the defendant is not proved. *Wakefield* v. *American Surety Co.* 209 Mass. 173, 177.

*Exceptions overruled.*