THOMAS F. J. DILLON *vs.* ROY A. BARNARD.

Worcester.   September 24, 1951. — November 5, 1951.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Broker*, Commission.   *Practice, Civil*, Parties, Abatement, Variance, Ordering verdict.

In an action against a single defendant by a real estate broker for a commission, nonjoinder of persons who were coöwners with the defendant of the property in question, even if they were shown to have participated with him in contracting with the plaintiff, should have been raised by the defendant by a plea in abatement and could not be raised at the close of the evidence in support of a motion by him for a directed verdict grounded on variance.

A general motion that a verdict be ordered for the defendant in an action with a declaration in two counts should have been denied where a verdict for the plaintiff was warranted on one of the counts although not on the other count.

A real estate broker hired by an owner of property did not earn a commission for procuring a purchaser thereof where it appeared that a customer procured by the broker, after first declining to buy the property and negotiating with the owner for a lease thereof, finally made an offer to buy the property on the owner's terms upon being informed that the owner had decided to sell and not to lease it, but that the customer's offer came after the owner had sold or agreed to sell the property to another party and so was too late.

Evidence warranted a finding that a real estate broker hired to procure a lessee of property earned his commission by procuring a responsible customer with whom one of several owners of the property negotiated and ultimately settled terms of a lease satisfactory to himself and his coöwners, although no lease ever was executed because the owners subsequently decided not to lease the property.

CONTRACT.   Writ in the Superior Court dated January 16, 1948.

The action was tried before *Donnelly, J.*

*W. J. Griffin*, for the plaintiff.

*R. W. Mirick*, for the defendant.

RONAN, J.   This is an action of contract by a broker to recover a commission as alleged in the first count of his

declaration for procuring a lessee and in the second count for procuring a purchaser for certain premises located in Worcester and used as a garage and showroom for automobiles. At the close of the plaintiff's evidence, the defendant filed and the judge, subject to the plaintiff's exception, allowed a general motion that a verdict be directed for the defendant. The correctness of this ruling is the only question presented for determination.

The motion which sought the direction of a verdict was based upon the pleadings, the opening, and all the evidence. The allowance of the motion cannot be supported upon the ground of variance between the declaration and the proof. It was not disputed that the property, for the sale or lease of which it is alleged the defendant promised to pay a commission, was owned by the defendant and others. The plaintiff admitted that he knew that the defendant was one of the coöwners, but there was nothing to show that the plaintiff ever knew who these other coöwners were. If the defendant desired to raise the point that the plaintiff was hired by all the owners, that the alleged promise to pay a commission was the joint promise of all the owners, and that they should all be joined as defendants, his remedy, which was well established by a general rule, was to file a plea in abatement, based upon nonjoinder and setting forth the names of the other owners, before he filed his answer. *Edler* v. *Thompson*, 13 Gray, 91. *Sabin* v. *Cooper*, 15 Gray, 532. *Nickerson* v. *Spindell*, 164 Mass. 25. Restatement: Contracts, § 117. No such plea was ever filed. The very purpose of the rule is to avoid any claim of variance where it appears from the evidence that others than the defendant joined in the contract. It was said in *Wilson* v. *Nevers*, 20 Pick. 20, 22, that in order to avoid the objection of nonjoinder when less than all joint promisors are made parties defendant and so "to avoid the evils that would result from repeated nonsuits on the same cause of action the rule was established, that the omission to include all the promisors was a defect in form merely, and could be taken advantage of only by plea in abatement." See *Leonard* v. *Speidel*,

104 Mass. 356, 359. Neither do we think that the opening which merely outlined the plaintiff's case and did not constitute evidence, as did the testimony which was subsequently introduced, will support the allowance of the motion.

The defendant did not move for a directed verdict on each count. If he had done so and a general verdict had been rendered for the plaintiff, the verdict could be sustained only in the event that the evidence was sufficient to support a verdict for the plaintiff on each count. *Gates* v. *Boston & Maine Railroad,* 255 Mass. 297, 302. But a general motion for a directed verdict should be denied if the plaintiff was entitled upon the evidence to go to the jury upon any one of the counts. *Grenier* v. *O'Gara,* 219 Mass. 15. See *Sylvia* v. *New York, New Haven & Hartford Railroad,* 296 Mass. 157; *Shumway* v. *Home Fire & Marine Ins. Co.* 301 Mass. 391. The remaining ground of the motion that a verdict be directed upon all the evidence requires us to examine the evidence to determine whether the plaintiff had made out a case on both or either of the counts.

There was evidence that the plaintiff and his employee, one Fitz, saw the defendant in December, 1946, and learned from him that the property was for sale at the net price of $125,000; that he had no objection to the plaintiff asking $130,000 in order to take care of the plaintiff's commission; that the property had been occupied by the Fitzhenry Cadillac Co. for many years under a lease the terms of which were disclosed, including the fact that it would expire in December, 1947; and that the tenant should have the first chance to purchase. The plaintiff in a few weeks produced a customer who was unwilling to pay the price. The plaintiff advertised the property. He offered the property to Henley Kimball Co. and so advised the defendant, but Fitzhenry was then in Florida and it was not until around the first of April that the defendant notified Fitz that Fitzhenry was not interested in purchasing the property and to try to make a deal with the Henley Kimball Co. Fitz reopened negotiations with one Hamilton, the manager of the Henley Kimball Co., who subsequently in the course of a few weeks

advised Fitz that the Henley Kimball Co. had changed its
policy and did not desire to purchase the property. Around
the first of July, Hamilton inquired of Fitz if there was a
chance to lease the property. The defendant told Fitz
that he would be willing to lease to Henley Kimball Co.
at an annual rental of $12,000 and that he preferred a five
year term, but that the Fitzhenry Cadillac Co. should
have the first chance to lease on those terms. Fitz at the
request of the defendant obtained for him a letter from
Hamilton that Henley Kimball Co. was willing to take a
lease for ten years at a yearly rental of $12,000. The
defendant on August 15, 1947, informed Fitz that the
Fitzhenry Cadillac Co. was unwilling to take a lease. Fitz
arranged a conference for the next day between Hamilton
and the defendant. At that conference, the parties agreed
upon the rental, including any increase if the taxes were
increased, the term of the lease which was to commence on
February 1, 1948, the payment of water bills, liability and
fire insurance, and the making of inside and outside repairs.
The defendant stated at this conference that, in the dis-
cussions that he had with the other owners after Henley
Kimball Co. sent its letter making an offer to lease, they
thought it was better to lease the property and that they
were glad to do so. Hamilton stated that he thought he
had "most things down" in that letter. Hamilton and the
defendant discussed the different points so that they would
have a thorough understanding, and when, according to
the testimony of Hamilton, everything was agreed upon
Hamilton tendered a check to the defendant for the first
month's rent. The defendant declined to accept the check.
He said that was not necessary as the Henley Kimball Co.
had been checked and found to be reliable. The defendant
near the close of the conference said he had discussed the
letter from Henley Kimball with his associates "and that
it was acceptable, and all we had to do was conclude on
some minor things, which we did." The defendant had
taken notes and said he would turn the material over to his
attorney to draft the lease which would be ready in a day

or two.   When Hamilton pointed out that his company was occupying its present quarters without any lease and that he wanted to be sure of the lease to the defendant's property, the defendant replied that it had all been discussed and that Hamilton had no competitors and "You'll get the thing."   The defendant informed Fitz around September 1, 1947, that they had decided to sell and not to lease.   Fitz told Hamilton that the lease was not going through.   Hamilton offered $130,000 for the property. The defendant was told by Fitz of this offer.   He said it was too late as the property had been sold or they had executed an agreement to sell.

There was no error in directing a verdict for the defendant in so far as the motion related to the second count.   The negotiations concerning the sale of the property to Henley Kimball Co. had broken down and this company changed its mind and desired no longer to buy but if possible to secure a lease.   When, upon the refusal of the defendant to lease, Henley Kimball Co. again desired to buy, it was too late, and whatever authority the plaintiff had to sell the property had been revoked by the sale or the written agreement to sell to a third person before Henley Kimball Co. submitted its only offer to buy.   *Des Rivieres* v. *Sullivan*, 247 Mass. 443, 448.   *Bartlett* v. *Keith*, 325 Mass. 265, 267.

There was, however, sufficient evidence to warrant a finding for the plaintiff upon the first count of the declaration to recover a commission for procuring a lessee.   The defendant contends that the plaintiff was employed by all the owners to secure a lease which would meet with their approval and that, as the plaintiff never procured a customer who was ready, able, and willing to make such a lease, he consequently did not perform the terms of his employment. Even if the plaintiff was hired by all the owners, *Monk* v. *Parker*, 180 Mass. 246, 248, the defendant cannot now complain, for reasons already stated, that the other part owners were not joined with him as parties defendant.   The plaintiff, however, is not entitled to recover unless he performed what he was hired to do.

It could be found upon evidence, none of which was objected to, *DuBois* v. *Powdrell*, 271 Mass. 394, that the defendant, who was the only owner who dealt with the plaintiff, his employee Fitz, or his customer Henley Kimball Co., had discussed the terms of the lease with the other part owners and that they had agreed to all the material provisions, leaving the defendant to "conclude on some minor things" which the defendant did with Hamilton. It is a fair inference that the defendant knew what the other part owners desired as to these minor points and that he had settled them to their satisfaction. As bearing upon the question as to whether Hamilton and the defendant agreed upon the terms of a lease satisfactory to the other part owners, it is important to note that the defendant, at the conclusion of his conference with Hamilton, did not state that he would have to confer with the other part owners to ascertain if the lease was agreeable to them but without consulting them he announced that he would turn over to his attorney the notes which he had taken during the conference, showing the points upon which he and Hamilton had agreed, for the purpose of having the lease drafted, which would probably take a day or two. The defendant was satisfied, and it is a fair inference that the defendant knew what the other part owners required and that they were satisfied with its terms. It could be found in other words that the plaintiff produced a customer to take a lease on the terms of all the owners.

The fact that no lease was executed did not bar the plaintiff from his commission. He had earned his commission when he produced a customer who was ready, able, and willing to take a lease on the terms upon which it had been offered by the defendant. *Green* v. *Levenson*, 241 Mass. 223, 224. *Lieberman* v. *Cohn*, 288 Mass. 327, 330. *Sherman* v. *Briggs Realty Co.* 310 Mass. 408, 413. *Barsky* v. *Hansen*, 311 Mass. 14, 16. *Magann* v. *Lawler Bros. Theatre Co.* 312 Mass. 317, 318. *Church* v. *Lawyers Mortgage Investment Corp. of Boston*, 315 Mass. 1, 6. *Chapin* v. *Ruby*, 321 Mass. 512, 515.

The exceptions are sustained and the new trial is to be confined to the first count relative to a lease.

*So ordered.*