MAX GLASSMAN & another *vs.* MAURICE J. BARRON & another.

Middlesex.    October 5, 1931. — December 3, 1931.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Broker*, Commission. *Partnership*. *Evidence*, Competency.

On all the evidence at the trial of an action for a commission by a real estate broker against two defendants who were brothers-in-law, a finding was warranted that the defendants were jointly interested and were partners in effecting an exchange of a brick block owned by

one of defendants for a store owned by a customer procured by the plaintiff; and therefore statements by one defendant were evidence against the other, and showed an authorization by each defendant to charge the other in the transaction.

There was evidence at the trial above described that the customer's agent agreed to the exchange if the defendants would pay the plaintiff's commissions on both properties; that the defendants agreed to such terms; that shortly thereafter the defendant who owned the brick block instructed another broker to try to make the same exchange; that the second broker saw the customer himself, who agreed to make the exchange; that the other defendant then told the plaintiff that the transaction would have to rest for a few days; and that on the same day, without the plaintiff's knowledge, the first defendant entered into a binding contract for the exchange with the customer's agent. *Held,* that

(1) A finding was warranted that the plaintiff was the active, efficient and effective cause of the exchange although the bargain was consummated by the second broker, who was employed by the defendants without the knowledge of the plaintiff;

(2) A further finding was warranted that the defendants, acting in bad faith, completed the transaction without the knowledge of the plaintiff for the purpose of avoiding the payment of commissions to him;

(3) A verdict for the plaintiff was warranted;

(4) The trial judge committed no error in admitting evidence of conversations between the plaintiff and the customer and his agent in the absence of the defendants to show the fact that such conversations occurred but not to prove the truth of what was said: the conversations were competent to show that the plaintiff was the efficient cause of the exchange; furthermore, the defendants were not prejudiced by the admission of such conversations since the substance of them was afterwards testified to by the customer's agent, who was called as a witness by the defendants.

CONTRACT OR TORT against Maurice J. Barron, Meyer Gordon and Nelson E. Howlett, the declaration containing a first count upon an account annexed for a broker's commission of $2,550, and a second count for the same amount, alleged to have been money had and received by the defendants to the plaintiff's use. Writ dated November 28, 1927.

In the Superior Court, the plaintiffs discontinued against the defendant Howlett. The action was tried before *Fosdick,* J. Material evidence is stated in the opinion. The judge denied a motion by the defendants that a verdict be ordered in their favor. There was a verdict for the defendants on the second count and for the plaintiffs on the

first count in the sum of $3,032.37. The defendants alleged exceptions.

*J. G. Bryer*, for the defendants.

*E. M. Dangel*, (*L. E. Sherry* with him,) for the plaintiffs.

CROSBY, J. This is an action of contract to recover a real estate broker's commission. The jury returned a verdict for the plaintiffs. The case is here on exceptions to the denial of the defendants' motion that the trial judge require the plaintiffs to elect on which count of the declaration they relied, to the denial of the defendants' motion for a directed verdict, to the admission of certain evidence, and to the refusal to give their requests for instructions.

The defendants are brothers-in-law. The defendant Gordon owned a house in Somerville, and the defendant Barron owned a brick block in Everett, hereinafter called the Everett Stores. There was evidence tending to show the following facts: In the spring of 1927, Gordon listed his house with the plaintiffs for sale. Late in September, 1927, Barron employed the plaintiffs to sell the Everett Stores at an asking price of $20,000, and the plaintiffs were to be paid the usual commission. At this time the plaintiffs had for sale certain real estate in Somerville called the Magoun Square block, for which the owner, one Liberman, was asking $80,000. The plaintiff, Max Glassman, who will hereafter be referred to as the plaintiff, testified that he told Barron about this property and that Barron said he would like to exchange his Everett Stores for it and said, "we could use the store for my brother-in-law." At this time Gordon went to the plaintiffs and said that he understood Barron was interested in the Magoun Square block and that he would like to have his property go in on the trade with the Everett Stores for the Magoun Square block. Liberman refused to exchange as suggested, and when Barron heard of this he said to the plaintiff, "Well, go ahead, try somebody else, something else might come up in the matter of exchange or cash customer, see what you can do."

In October, 1927, one Connors acquired the Magoun Square block and took title in the name of one Howlett, a

"straw man," who was authorized to employ brokers to sell the property. Howlett saw the plaintiff, and quoted a price of $80,000; afterwards the plaintiff showed Gordon's house to Howlett and took him to see Gordon, where the situation respecting the properties of each defendant was explained to him. Gordon told Howlett to look at the Everett Stores and to let him know about an exchange. He gave him a price of $20,000 on the Everett Stores subject to a first mortgage of $11,000 and a second mortgage of $3,000. Gordon told Howlett to look at both properties for an exchange as he, Gordon, was interested for a store, and that Barron wanted to buy the property with him for an investment. The plaintiff told Gordon all about the Magoun Square block and Gordon said he would talk it over with Barron. The same night the plaintiff telephoned Barron from Gordon's store and explained the situation and Barron said "Go ahead, try to make a deal if you can. You know I am interested in the Magoun Square building, it is a nice piece of property and if you can pull through the deal, go to it"; "you go ahead for the deal and if Mr. Howlett and Connors don't want his (Gordon's) house I can fix it up with Mr. Gordon." Barron further told him that he could give the information to Gordon at any time. After further negotiations between Howlett and the defendants, in which the plaintiff took part, it could be found that Howlett agreed that he would exchange the equity in the Magoun Square block for the equity in the Everett Stores owned by Barron, if the defendants would pay the commissions on both properties. There was further evidence that the defendants agreed to these terms; that they employed the plaintiffs to effect the exchange on the above terms; and that the agreement for the exchange was consummated through the efforts of the plaintiff.

There was evidence that shortly after the above agreement was made Barron went to one Meehan, a real estate broker, gave him the details of his property, and told him he would like to have him see if he could exchange his property for the Magoun Square block. Meehan saw Connors, told him that Barron wanted to trade the equities

even, and Connors agreed to make the exchange on that basis. The transaction was consummated on the same day. At three o'clock on that day Gordon went to the plaintiff's office and said to the plaintiff, "I have talked to my brother-in-law . . . and . . . [he] said you will have to leave it rest for a few days, this transaction, possibly the first of the week, Monday or Tuesday." That evening, unknown to the plaintiffs at that time, a binding agreement was entered into between Barron and Howlett on the basis of an even exchange of equities, the terms being precisely the same (except the agreement with reference to the payment of the commissions) as the plaintiffs had given to the defendants. The plaintiff testified that on the following Saturday and Sunday, Gordon told the plaintiff that nothing definite had been done with reference to the exchange; that on the Monday following Howlett went with the plaintiffs to see Gordon, and the plaintiff said he understood an agreement had been signed; that Gordon at first denied it but finally admitted that it was true; that later the plaintiff saw Barron and asked him about his commission and Barron said the plaintiff was not entitled to any; that afterwards the plaintiff again asked Barron about his commission and the latter replied, "You better drop your case against me but I will make it good for you"; that the plaintiff refused and Barron said, "We will probably make it up."

The evidence warranted a finding that the defendants in this transaction were partners. It is manifest that they acted together in a common enterprise in which both were interested. As there was evidence that each defendant agreed to pay the commissions, the liability of each could be found from their individual statements. It was said by Chief Justice Knowlton as to one of the defendants in *Runkle* v. *Burrage*, 202 Mass. 89, at page 98, "In a sense he was acting as their agent and trustee in matters in which he and they had a common interest. They were *quasi* partners with him in the enterprise, and his relation to them was analogous to that of a partner to his copartner." See *Smith* v. *Burton*, 59 Vt. 408. See also *Currier* v. *Sillo-*

*way,* 1 Allen, 19, 20; *Mersick* v. *Bilafsky,* 205 Mass. 488, 492. In the case at bar the evidence warranted a finding of a joint undertaking of such a nature that the statements of one defendant were evidence against the other,. and shows an authorization by each defendant to charge the other in this transaction. The evidence amply warranted a finding that the defendants promised the plaintiffs they would pay both commissions if Howlett and Connors would make the exchange of the respective properties on even equities.

It could have been found that the plaintiffs were the active, efficient, and effective cause of the exchange, and are therefore entitled to their commissions, although the bargain was consummated by Meehan who was employed by the defendants without the knowledge of the plaintiffs. *Dowling* v. *Morrill,* 165 Mass. 491. *Fitzpatrick* v. *Gilson,* 176 Mass. 477. *Cesana* v. *Johnson,* 232 Mass. 444. *Doten* v. *Chase,* 237 Mass. 218. *Buono* v. *Cody,* 251 Mass. 286. *Elliott* v. *Kazajian,* 255 Mass. 459. They are not precluded from recovering because the transaction was concluded in their absence, "otherwise· brokers always might be cheated out of their commissions." *French* v. *McKay,* 181 Mass. 485, 486. *Willard* v. *Wright,* 203 Mass. 406, 409. The promise of the defendants to pay both commissions was one of the terms by which the exchange was made possible; that promise was a primary obligation on their part to the·plaintiffs. When Connors and Howlett agreed upon the defendants' terms to make the exchange on the basis that the equities of the respective properties should be equal, and that the defendants should pay both commissions, the plaintiffs had fully performed their contract with the defendants and had earned their commissions. Furthermore, the evidence warranted a finding that the defendants completed the transaction without the knowledge of the plaintiffs for the purpose of avoiding the payment of commissions to them. Such a purpose would be an act in bad faith and does not deprive the plaintiffs of their right to recover. *Dowling* v. *Morrill,* 165 Mass. 491. *O'Connell* v. *Casey,* 206 Mass. 520. *Semonian* v.

*Bloomberg,* 253 Mass. 32, 36–37, and cases collected. *Dupuis* v. *Dupuis,* 267 Mass. 224, 228. The cases cited by the defendants are distinguishable in their facts from the case at bar.

Although the evidence was conflicting, it is manifest that a verdict could not properly have been directed in favor of either defendant, and the exception to the refusal of the judge to direct such a verdict cannot be sustained.

The defendants excepted to the admission in evidence of conversations between Howlett and Connors and the plaintiffs in the absence of either of the defendants. The trial judge admitted the evidence for the purpose of showing the fact that such conversations occurred, but not to prove the truth of what was said. We are of opinion that the evidence was admissible. It had some tendency to show that the plaintiffs were the efficient cause of the exchange of the properties, and was not inadmissible as hearsay. Where, as here, the fact in issue is whether the plaintiffs were the active and efficient cause of the exchange, the conversations were direct and primary evidence on that issue. See *Hubbard* v. *Allyn,* 200 Mass. 166, 174; *Noble* v. *Mead-Morrison Manuf. Co.* 237 Mass. 5; *Fleming* v. *Doodlesack,* 270 Mass. 271; *Commonwealth* v. *Gallo,* 275 Mass. 320, and cases cited at 329; *McDonald* v. *Smith,* 99 Minn. 42, 44–45; *Huff* v. *Cole's Estate,* 127 Mich. 351; *Obenauer* v. *Solomon,* 151 Mich. 570, 575; 3 Wigmore on Ev. §§ 1770, 1772. In any event the defendants were not prejudiced by the admission of the conversations as the substance of them was afterwards testified to by Howlett who was called as a witness by the defendants. *Morrison* v. *Lawrence,* 186 Mass. 456, 458. *Clark-Rice Corp.* v. *Waltham Bleachery & Dye Works,* 267 Mass. 402, 412.

The exception to the judge's refusal to require the plaintiffs to elect on which count of the declaration they relied is not argued and is deemed to be waived. The defendants in their brief expressly waived the exceptions to the refusal of the judge to give their requests for instructions.

*Exceptions overruled.*