CLAUDE LEITNER *vs.* REGINALD FOSTER & another, executors.

Middlesex. March 11, 1932. — July 12, 1932.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, FIELD, & DONAHUE, JJ.

*Broker*, Commission. *Contract*, Construction. *Landlord and Tenant*, Assignment, Construction of lease.

At the trial of an action for a commission by a broker against one who had given a lease of land with an option to the lessee to renew for a further term upon the giving of notice at a certain time, which was more than a year before the expiration of the original term, there was evidence that the defendant agreed in writing to pay the plaintiff the commission sought by him "if said option is exercised"; that, at the time for giving notice of renewal, the lessee was ready and able to exercise his option, and desired to do so, but that, at the request of the defendant, who stated to him that he did not wish the option exercised because of "financial conditions" and because "according to the lease he was obliged to pay a commission and he didn't want to pay it one year ahead of the time when the new lease went into effect," the lessee refrained from giving the required notice at that time and executed with the defendant an agreement extending the time for giving such notice to a time shortly before the expiration of the original term; and that the lessee never gave the notice. *Held*, that

(1) Findings were warranted that the defendant's real purpose in persuading the lessee to delay the exercising of the option was to avoid the payment of the commission to the plaintiff, and that the defendant acted in bad faith;

(2) The evidence warranted a finding that such persuasion by the defendant was the sole and active cause of the failure by the lessee to give the notice at the time originally specified by the lease;

(3) It was immaterial that the lessee was given an opportunity to exercise the option at a future time;

(4) Although the condition for payment of the commission contained in the agreement between the plaintiff and the defendant never was fulfilled, a finding was warranted that the defendant prevented the plaintiff from earning his commission and thereby violated his contract with the plaintiff;

(5) A verdict for the plaintiff was warranted.

CONTRACT. Writ dated January 26, 1929.

The action was tried in the Superior Court before *Williams*, J. Material evidence is stated in the opinion. The judge ordered a verdict for the defendants. The plaintiff alleged exceptions.

The case was argued at a sitting of the court on March 11, 1932, before *Rugg*, C.J., *Crosby, Sanderson,* & *Field*, JJ., and, after the death of *Sanderson*, J., was submitted on briefs to *Pierce, Wait,* & *Donahue*, JJ.

*E. O. Proctor*, for the plaintiff.

*G. Hoague*, for the defendants.

CROSBY, J. This is an action brought to recover damages for an alleged breach of contract. The trial judge at the close of the evidence directed the jury to return a verdict for the defendants, after the parties had entered into a stipulation, in substance, as follows: It is agreed by the parties that the court shall order a verdict for the defendants; that the plaintiff takes exception to that order of the court and will take the case to the Supreme Judicial Court; that if the Superior Court erred in not submitting the case to the jury on evidence properly admitted or improperly excluded, judgment shall be entered for the plaintiff in the sum of $1,650 with interest at six per cent from June 1, 1926, to the date of judgment. It was further recited that "the defendant admits for purposes of this case that the contract testified to was between the plaintiff and Charles H. Pearson."

There was evidence tending to show the following facts: The plaintiff was a real estate broker. On or about February 1, 1916, Charles H. Pearson, the defendants' testator, employed the plaintiff to negotiate for him a lease of a store and basement of a building, owned by the testator's wife, Louler N. Pearson, situated at number 180 Tremont Street, Boston. On March 23, 1916, as a result of the plaintiff's negotiations a lease was entered into between Pearson's wife and The Kelsey Company for the term of ten years from June 1, 1916, with an option, recited in the lease, as follows: "It is understood and mutually agreed to that the Lessee has the right to renew this lease for the term of

. . . ten additional years, if at any time during the first six months of the year . . . Nineteen hundred and twenty-five it gives written notice to that effect to the Lessor and that for such . . . ten additional years the rent is to be at the rate of . . . Sixteen thousand and five hundred dollars per annum, all other conditions of this lease to remain the same; and if such notice is given, then the said renewal is to be duly executed on this lease by the Lessee and the Lessor or her heirs or assigns." Pending the negotiations and before the lease was executed, the plaintiff and Pearson agreed as follows: "Subject — Lease of Store & Basement No. 180 Tremont Street. In regard to brokerage on lease negotiated by you on the store and basement to The Kelsey Company, it was understood and agreed that . . . one per cent, of the rent payable on the . . . ten years term, was to be paid to you on payment to me by The Kelsey Company of the first monthly payment due from it on June 1, 1916. In respect to brokerage to you on the additional . . . ten year option given The Kelsey Company, you will be entitled to . . . one per cent, on the rent payable for the said additional . . . ten years, if said option is exercised." On June 2, 1916, Pearson paid the plaintiff $1,510 being one per cent of the rent payable on the ten year term. The Kelsey Company, having been succeeded by Waldorf System Incorporated, a Massachusetts corporation, assigned "the said lease, the premises thereby demised, and all the lessee's right, title and interest in and under the same from May 1, 1919" to Waldorf System Incorporated, which accepted the assignment. On April 11, 1924, an agreement was entered into between Pearson and Waldorf System Incorporated, reciting the foregoing assignment and the further fact that Pearson "Is the successor in title of the said Louler N. Pearson now deceased, and is the present owner of said premises and the said land." In this instrument it was agreed as follows: "The said Charles H. Pearson as lessor does hereby assent in writing to the said assignment of said lease and all the lessee's right, title, and interest in and under the same from May 1st, 1919, and hereby accepts in the place of The Kelsey Company the said Waldorf

System Incorporated as the lessee under said lease and is entitled to all the rights and privileges given to the original lessee thereunder." On March 18, 1925, the board of directors of Waldorf System Incorporated, passed the following vote which was admitted subject to the defendants' exception: "Voted: That the President or Treasurer be and hereby is authorized, in his discretion, to exercise on behalf of the corporation the right of renewal of the lease of 180 Tremont Street store, Boston."

Percy E. Woodward, called by the plaintiff, testified that in 1925 and 1926 he was president and a director of the Waldorf System Incorporated, and in active charge of its affairs; that in the early part of 1925 he had a talk with Pearson, who asked for an appointment. Subject to the defendants' exception this witness testified as follows: "Pearson said that the Waldorf had a right to exercise an option to have 180 Tremont Street for ten years, — an extension of the lease; it was about a year ahead of when the lease was to take place, and on account of financial conditions he didn't want us to exercise the option as he felt that he should not be obliged to pay the commission until the time that the lease started, — until the time that the last ten years came into effect. He wanted to know if the Waldorf wouldn't consider a new agreement with him, that we would not exercise the option until say a month before the lease expired, the first ten years expired. He said if we would agree to extend the lease and agree to an extension, or have another paper so that we would not exercise the option that there would be no more trouble of trying to break the other lease, which he was continually trying to do, because he claimed The Kelsey Company had no right to give this option for an extension to the Waldorf System, and also that the Waldorf System was doing things that violated the lease. He said that there was a commission due somebody. He said that according to the lease he was obliged to pay a commission and he didn't want to pay it one year ahead of the time when the new lease went into effect. That is the only reason he gave. Witness told Pearson that the Waldorf System wished to avail itself

of the option. He said 'You know this is a very profitable store and the Waldorf intend to exercise the option.' Witness said he would see his attorney. Witness, having seen his attorney, again talked with Pearson. He told him that his attorney objected to the Waldorf going into an extension. Pearson talked about family conditions, and appealed to witness as a man that it would do the Waldorf no harm at all to agree to this extension, and witness finally said that if he could get his attorney to agree to it, and the board would pass it, he would recommend that this extension be put through." Thereafter the Waldorf System Incorporated, and Pearson executed a written agreement dated June 26, 1925, which provided in part as follows: "Whereas, Waldorf System Incorporated desires to exercise the right of renewal of said lease for said additional term of Ten years upon the said annual rental of $16,500. with the other conditions of the lease remaining the same but at the request of said Charles H. Pearson has withheld and is withholding the giving of notice to that effect within the first six months of 1925; Now, Therefore, . . . said Charles H. Pearson . . . does hereby agree with the said Waldorf System Incorporated . . . that the time within which the said Waldorf System Incorporated . . . may give the notice of its election to renew the said lease upon the aforesaid terms, shall be and hereby is extended to and including May 1, 1926, and does hereby agree that if said Waldorf System Incorporated, . . . shall give, on or before May 1, 1926, written notice to the said Charles H. Pearson . . . either personally or by mailing the same by registered mail postage prepaid, addressed to said Charles H. Pearson . . . to the place where the rent then last payable under the present lease was sent, stating that the Waldorf System Incorporated . . . has elected to renew said lease at the aforesaid rental, said Charles H. Pearson . . . will give unto the said Waldorf System Incorporated . . . on or before June 1, 1926, duly executed and acknowledged, a good and valid renewal of said lease for the said additional term of ten years at the annual rental of $16,500, and with

all other conditions (excepting rental and renewal right) being the same as those provided in the aforesaid lease."

Woodward testified, subject to the defendants' exception, that at that time the Waldorf System Incorporated, was ready, willing and able to renew the lease. Written notice of the exercise of the option was never given by the Waldorf System Incorporated. The plaintiff's counsel offered to show that, through an oversight of Woodward's subordinate who was charged with the giving of notices, the failure to give the notice was due to an inadvertence. This evidence was excluded, subject to the plaintiff's exception.

After June 1, 1926, Woodward again talked with Pearson and took with him a check that Pearson had sent back by mail to him personally. He told Pearson that apparently from the letter which he had with him the Waldorf System Incorporated, had not exercised the option of the lease for ten years, and asked Pearson to recall "that he had consented to the extension for the giving of notice not only against the advice of his attorney but purely and simply as man to man, which Pearson had asked him to do as a favor to him." Pearson said he was very sorry but the circumstances were such that the Waldorf System Incorporated, had evidently overlooked exercising the option and he should stand by it. Woodward asked Pearson if he realized the position he was putting him in before his board of directors. Pearson replied that "he admitted that it might be pretty sharp, that he had a family to look after, that possibly he was pulling a sharp trick but nevertheless it was the way the thing had come out, and the company would not exercise the option." Pearson said: "I will give you a lease for two months, but I am negotiating with somebody and then, without doubt, they will give the Waldorf an extension of five or six months at least, tenants at will, until they wish to remodel the building."

The plaintiff testified that early in 1925 he asked Pearson if he had renewed the lease with the Waldorf System

Incorporated, and Pearson replied he had not, that negotiations were under way; that he told Pearson he had called the treasurer of the Waldorf System Incorporated, in Springfield, who said he would attend to it that afternoon, which was on February 1, 1925, and as the plaintiff had been expecting to hear from him, he thought he would come around and ask whether or not a check was due; that Pearson replied that it was not yet due, Woodward, the president of the .company had been to see him, and Pearson promised that he would notify the plaintiff just the moment the renewal was executed. The plaintiff further testified that on June 1, 1925, he again saw Pearson and told him that Merrill, who was the real estate man for the Waldorf System Incorporated, had told him that the lease was executed, and the plaintiff had been expecting to hear from Pearson; that Pearson told him he thought the "final touches would be put on the lease before the sun went down"; that two or three days later he saw Pearson again and was told by him that the lease had not been renewed, and if he wanted to know anything more about it he could see his attorney; that he went to see Pearson's attorney who refused to discuss the matter with him.

The words "if said option is exercised," contained in the brokerage agreement, as matter of law import a condition of the payment of the commission. *Alvord* v. *Cook*, 174 Mass. 120. *Canton* v. *Thomas*, 264 Mass. 457, 459. The contract upon which the action is based provided that Pearson would pay the plaintiff a commission if he negotiated a ten year lease of the premises owned by Pearson's wife, and it was further stipulated: "In respect to brokerage to you on the additional . . . ten year option given The Kelsey Company, you will be entitled to . . . one per cent, on the rent payable for the said additional . . . ten years, if said option is exercised." The lease contained no provision that it should not be assigned; it therefore was assignable by The Kelsey Company to its assignee the Waldorf System Incorporated. *Patten* v. *Deshon*, 1 Gray, 325, 330. *Lamson* v. *Coulson*, 234 Mass.

288, 295. It was enforceable against Pearson as successor to the reversion. *Watts* v. *Bruce,* 245 Mass. 531, and cases cited at page 533. The method provided for the exercise of the option, under both the terms of the lease and the extension agreement, was by written notice. Such notice was never given. Manifestly, if nothing else appeared, the plaintiff had not earned a commission. He contends, however, that Pearson prevented him from earning his commission by persuading the lessee to forego its right to exercise the option in accordance with the terms of the lease. It is the contention of the defendants that there is no evidence that the testator prevented the plaintiff from earning his commission; that the proximate cause of the plaintiff's not being entitled to a commission is that the Waldorf System Incorporated, never exercised its option in the manner provided either by the terms of the original lease or by the terms of the extension agreement.

We are of opinion, however, that on consideration of the evidence in its aspect most favorable to the plaintiff, the jury would have been warranted in finding that Pearson prevented the plaintiff from earning his commission by persuading the lessee, the Waldorf System Incorporated, to forego its right to exercise the option under the terms of the lease, thereby violating his contract with the plaintiff. That such a finding could be made was amply justified by the evidence. It was said by Hammond, J., in *Leonard* v. *Eldridge,* 184 Mass. 594, at page 595: "In *Sibbald* v. *Bethlehem Iron Co.* 83 N. Y. 378, 384, the following language is used: 'If in the midst of negotiations instituted by the broker, and which were plainly and evidently approaching success, the seller should revoke the authority of the broker, with the view of concluding the bargain without his aid, and avoiding the payment of commissions about to be earned, it might well be said that the due performance of his obligation by the broker was purposely prevented by the principal.'" The same language was again quoted by Hammond, J., in *Cadigan* v. *Crabtree,* 186 Mass. 7, 13. We are of opinion that the principle enunciated in these cases is applicable to the

case at bar. It appears that on March 23, 1916, as a result of the plaintiff's negotiations, the lease in question containing the ten year option clause was entered into. In order to earn his additional commission nothing remained for the plaintiff to do but to await the exercise of the option by the lessee in the manner provided by the lease. On March 18, 1925, during the six months' period provided for in the lease, the board of directors of Waldorf System Incorporated, passed a vote authorizing the exercise of the right of renewal. Woodward told Pearson in the early part of 1925 "that the Waldorf System wished to avail itself of the option." Woodward said to him, "You know this is a very profitable store and the Waldorf intend to exercise the option." Woodward also testified that "the Waldorf System Incorporated was at that time ready, willing and able to renew the lease." The time referred to evidently was in June, 1925. The extension agreement dated June 26, 1925, provides: "Whereas, Waldorf System Incorporated desires to exercise the right of renewal of said lease . . . but at the request of said Charles H. Pearson has withheld and is withholding the giving of notice to that effect within the first six months of 1925. . . ." There was ample evidence upon which the jury could find that the negotiations originally instituted and conducted by the plaintiff were approaching success; that on the eve of a successful culmination Pearson sought out Woodward, "asked for an appointment," and proposed the scheme hereinbefore narrated and subsequently induced its formal execution. It is immaterial that the lessee was given an opportunity to exercise the option at a future time. The jury would be warranted in finding that Pearson persuaded the lessee not to exercise its option within the time fixed for the purpose of avoiding the payment of a commission about to be earned. The testimony of Woodward was that Pearson said "on account of financial conditions he didn't want us to exercise the option as he felt that he should not be obliged to pay the commission until the time that the lease started." "He said that according to the lease he was obliged to pay a com-

mission and he didn't want to pay it one year ahead of the time when the new lease went into effect." The jury were warranted in finding that the reason given by Pearson for delay in exercising the option was not the true reason for the request, but that his real purpose was to avoid the payment of any additional commission to the plaintiff. As it could have been found that Pearson acted in bad faith by persuading the lessee not to exercise the option, a verdict could not rightly have been directed for the defendants. *French* v. *McKay*, 181 Mass. 485, 486. *Cadigan* v. *Crabtree*, 186 Mass. 7. *O'Connell* v. *Casey*, 206 Mass. 520, 528. *Semonian* v. *Bloomberg*, 253 Mass. 32, 36–37. *Glassman* v. *Barron*, 277 Mass. 376, 381–382.

The jury would have been warranted in finding that the option would have been exercised under the original lease but for the acts of the defendants' testator. The extension agreement stated, "Waldorf System Incorporated . . . at the request of said Charles H. Pearson has withheld and is withholding the giving of notice to that effect within the first six months of 1925." The jury could have found that Pearson was the active and sole cause of the failure of Waldorf System Incorporated, to give the written notice required under the original lease.

The plaintiff's exceptions are sustained. As the case should have been submitted to the jury, and as no error appears in the admission or exclusion of evidence, in accordance with the stipulation judgment is to be entered for the plaintiff in the sum of $1,650 with interest at the rate of six per cent from June 1, 1926, to the date of judgment.

*So ordered.*