WELDA HANEY *vs.* JOHN J. BEATON.

Plymouth.   October 8, 1943. — October 28, 1943.

Present: FIELD, C.J., LUMMUS, DOLAN, COX, & RONAN, JJ.

*Broker,* Commission.   *Contract,* What constitutes, For sale of real estate.

Evidence warranted findings that the defendant, who hired the plaintiff
   to procure a sale to the defendant of certain property upon terms satis-
   factory to him and promised to pay the plaintiff a commission therefor,
   agreed to the terms of an offer of sale procured by the plaintiff from the
   owner of the property, and that the plaintiff had fully performed what
   he had been hired to do and was entitled to his commission, although
   the defendant later refused to make the purchase on those terms and
   eventually purchased a portion of the property for a smaller price as a
   result of a new agreement negotiated by another broker.

CONTRACT.   Writ in the Superior Court dated December
30, 1938.

The action was heard without a jury by *Goldberg,* J., who
found for the plaintiff.   The defendant alleged exceptions.

*H. A. Lider,* for the defendant.

*H. F. Hathaway,* for the plaintiff.

RONAN, J.   The defendant, who was engaged in the busi-
ness of raising, harvesting and marketing cranberries and
interested in acquiring cranberry bogs, employed the plain-
tiff, a dealer in real estate, on May 7, 1937, to procure for
him the cranberry bog property owned by Ware Brothers at
a price satisfactory to him.   He was to pay her the usual
commission.   The defendant had been familiar with the
property since 1930, and had endeavored since 1936, through
a firm of brokers, to secure it but his efforts had been unsuc-
cessful.   Within a few days after her employment began, the
plaintiff secured a written offer from the attorney of the
owners to sell all their property for $120,000, a copy of an
agreement of the owners with an electric company giving
the latter a right of way over the land, and also a list of the
encumbrances upon the property.   The defendant told her
that he would buy it and pay cash for it.   He planned to

take the title in the name of a straw for the purpose of avoiding a suit by the firm of brokers. He consulted the attorney for the owners on May 12, 1937, for the purpose of having the papers prepared for conveying the property to him. He told the attorney that the price was satisfactory and that he was ready to pay for it as soon as the papers were drafted. The attorney told him that the owners would not accept all the purchase price in cash, but that they would sell subject to the outstanding mortgages and other obligations, and that the balance of the price was to be paid by a mortgage payable in five annual instalments, "that is, interest and deferred payments, and the defendant said he would do that." The deed was to be in the name of a straw as the firm of brokers had threatened to sue him. He then told the plaintiff that he had made arrangements for drafting the papers. He told the attorney on June 3, 1937, that he did not want the papers passed before he completed the checking up of the area and crop. He asked the plaintiff if she would split her commission with the firm of brokers and this she refused to do. In June, 1937, "after he agreed to take the bog," he informed the plaintiff that he was not going through with the purchase because the brokers were suing him and that his failure to buy was "through a fault of his own." On September 7, 1937, he discussed with the cashier of a bank, which held a mortgage upon the Ware property, whether the bank had any objection to his buying the property and thereafter immediately discharging the mortgages. He wrote the attorney on September 17, 1937, that he was no longer interested as the price was too high. Within a week he submitted a new offer to the attorney. Ware Brothers on October 4, 1938, executed a written agreement, which was drafted by the firm of brokers, to sell the cranberry bogs together with other personal property for $86,250, and the defendant became the purchaser in accordance with this agreement. This did not include some of the upland and buildings included on land which the defendant was willing to purchase for $120,000 in May, 1937. The defendant denied that he employed the plaintiff and introduced evidence showing that the sale was consummated by the firm

of brokers. We have recited some of the material facts that could be found upon the evidence. The judge found that the defendant agreed to purchase the property for $120,000 upon the terms offered by the owners and that thereafter the defendant rejected the offer. He refused to rule that the plaintiff was not entitled to recover, that the finding must be for the defendant, and that the evidence shows only an offer to the defendant to sell for $120,000 and a rejection of this offer. The judge found for the plaintiff.

The defendant concedes that the judge could find that the defendant and the attorney for the owners agreed upon the price and the property to be conveyed and that the judge could have found for the plaintiff if the owners had accepted the cash offer by the defendant to pay $120,000 and the defendant then repudiated this offer, but contends that the parties never agreed upon the manner in which the purchase price was to be paid. The only question then is whether the finding that they did agree can be supported upon any reasonable view of the evidence including all the rational inferences of which it was susceptible. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139. *Howard* v. *Malden Savings Bank,* 300 Mass. 208. *Codman* v. *Beane,* 312 Mass. 570.

The evidence including the conversations of the defendant with the attorney, his admissions to the plaintiff, and his entire conduct subsequent to May 12, 1937, was ample to support a finding that he had agreed on the last mentioned date to purchase the property upon the terms offered by the owners, and that the plaintiff had fully performed the work she had undertaken at the request of the defendant and was entitled to recover. *Cohen* v. *Ames,* 205 Mass. 186. *Hutchinson* v. *Plant,* 218 Mass. 148. *Trent* v. *Goldberg,* 265 Mass. 219. *Laidlaw* v. *Vose,* 265 Mass. 500. *Lieberman* v. *Cohn,* 288 Mass. 327. *Pacheco* v. *Medeiros,* 292 Mass. 416.

The failure of the defendant to purchase the property in accordance with his agreement, whether in order to avoid a suit by the brokers or for any other reason due to his own fault, would not deprive the plaintiff of her right to recover for accomplishing what she was hired to do and for which she was promised a consideration, *Frankina* v. *Salpietro,* 269

Mass. 292; *Leitner* v. *Foster*, 280 Mass. 128; *Franklin* v. *Davis*, 286 Mass. 202; *Westlund* v. *Smith*, 291 Mass. 96, nor would she be deprived of her right to recover because the defendant purchased the property as the result of a new agreement negotiated by other brokers. *Glassman* v. *Barron*, 277 Mass. 376. *Provost* v. *Burgin*, 287 Mass. 273. *Holton* v. *Shepard*, 291 Mass. 513. *Kacavas* v. *Diamond*, 303 Mass. 88. *Sherman* v. *Briggs Realty Co.* 310 Mass. 408.

There was no error in denying the requests or in finding for the plaintiff.

*Exceptions overruled.*