JOSEPH B. CORLETO *vs.* PRUDENTIAL INSURANCE
COMPANY OF AMERICA & another
(and a companion case [1]).

Suffolk.    November 6, 1946. — January 8, 1947.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & SPALDING, JJ.

*Broker*, Commission.  *Proximate Cause.*

In an action by a real estate broker against an owner of land for a com-
mission for procuring a purchaser of land listed with him by the
owner, and also against an authorized agent of the owner; and in a
second action, tried with the first, by the same plaintiff against the
purchaser based on the purchaser's having received part of a com-
mission paid by the owner to another broker through whom the sale
was consummated, the plaintiff was entitled to recover the full amount
of his commission from the owner upon proof that he had earned a
commission because his efforts were the effective cause of the sale;
but he was not entitled to recover against either of the other defendants.
A broker who, on behalf of an owner who had listed with him certain real
estate, had carried on negotiations with one whom he had interested
in the property and who afterwards purchased it through another
broker, was not as a matter of law precluded from being found to
have been the efficient cause of the sale merely because he knew noth-
ing about the contract of sale or deed until after they were executed,
or because the final terms of sale differed from those proposed during
his negotiations, or because the owner paid a commission to the other
broker possibly in ignorance of the services the first broker had
rendered.
A verdict for the plaintiff in an action by a broker for a commission for
procuring a sale of real estate of the defendant would have been
warranted by evidence of negotiations by him with an authorized
agent of the defendant and a prospective purchaser which could have
been found to have been the efficient cause of a sale to that purchaser
although the sale was consummated by the purchaser through another
broker who had been brought in by the purchaser, after he had de-
cided to buy, in order that the second broker, by pretending to effect
the sale, might collect a commission and divide it with the purchaser,
which he did.

---

[1] In the companion case the same Joseph B. Corleto is the plaintiff, and the
purchasers of the Kinross Apartments, Orlandella and Capodilupo, are the
defendants.  There are two counts, one in contract alleging that the defend-
ants received a part of the broker's commission in the same transaction, namely
$6,875, to the use of the plaintiff; and the other in tort, alleging conspiracy
to divert to themselves and one Spitz a commission of $7,400 earned by the
plaintiff.

TWO ACTIONS OF CONTRACT. Writs in the Superior Court dated March 10, 1943, and February 26, 1944.

The cases were tried before *Buttrick*, J.

*M. Michelson*, for the plaintiff.

*J. C. Johnston*, (*J. Friedberg* with him,) for the defendants Capodilupo and another.

*J. F. Sullivan*, for the defendant Prudential Insurance Company of America and another.

LUMMUS, J. The first action is in contract. The first three counts allege in various forms that The Prudential Insurance Company of America (hereinafter called Prudential) owes the plaintiff a commission of $7,400 as a real estate broker, with respect to the sale by that company early in April, 1942, of nine apartment buildings in Boston, containing seventy-four apartments, called collectively Kinross Apartments, to Felix Orlandella and Jerry Capodilupo as trustees of the Capodella Realty Trust, of which the beneficiaries are the children of the trustees. The two remaining counts allege liability to pay the plaintiff a commission of $5,000 on the same transaction, on the part of both Prudential and the other defendant Street and Co., Inc. (hereinafter called Street) in the fourth count, and on the part of the latter alone (on the theory of warranty by Street of its authority to bind Prudential) in the fifth count.

After directed verdicts for the several defendants, the cases come here upon a report which presents the question whether the evidence warranted a verdict for the plaintiff against any of the defendants. The evidence warranted a finding of the following facts.

Kinross Apartments was owned by Prudential, which put it into the hands of Street for management and sale, although the price had to be such as Prudential might subsequently accept. Street was the "contract broker" for Prudential, which sold no real estate except through Street. Prudential paid Street for its services, besides paying any commission earned by any other broker, if there were such. Street was authorized by Prudential to list real estate with other real estate brokers. On July 29, 1940, Street did list Kinross Apartments with several hundred such brokers, including

the plaintiff but not including one Spitz, and notified them that the owner (Prudential) was believed to be "receptive to an offer" of $280,000, of which ten per cent must be in cash, and the rest on a purchase money mortgage. In the matter of Kinross Apartments, everything that Street did was authorized by Prudential.

On August 14, 1940, the plaintiff, having shown the property to Antonio Capodilupo, his son Jerry, and his son-in-law Felix Orlandella, all of whom, the plaintiff was told, were to be interested in the property if bought, sent to Street an offer signed by Antonio to buy the property for $280,000, of which only $15,000 was to be paid in cash. Street refused the offer after consultation with Prudential. On August 17, 1940, the plaintiff brought all three to Street's office. After a discussion, the offer was somewhat bettered, but not enough to induce Street to accept it. Street told the plaintiff that if ten per cent should be paid in cash he would get a commission of $7,500, but that if only $25,000 should be paid in cash the commission would be only $5,000. The plaintiff agreed to those terms.

Street remained interested in the proposal. On September 26, 1940, the plaintiff sent to Street a new offer from Antonio to buy for $280,000, of which $25,000 was to be cash. Because the terms of payment of the purchase money mortgage were deemed unsatisfactory, Street refused that offer also after consultation with Prudential. The reluctance of Antonio to make a better offer was due mainly to the number of vacant apartments. The plaintiff continued to discuss the matter with Street to some extent, and with Jerry Capodilupo, who was interested to learn that the number of vacant apartments was becoming smaller. The plaintiff saw Jerry on the matter in October and December, 1940, in nearly every month of 1941, and in January, February and March, 1942. In the latter part of 1941 Jerry told the plaintiff that he would buy on the terms that Street had proposed but asked the plaintiff not to communicate that fact to Street until the vacancies had further decreased. On February 12, 1942, Street wrote to the plaintiff that the vacancies had been reduced to one, and invited a revival

of the "deal." The plaintiff showed Street's letter to Jerry on February 18, 1942, and told Jerry that the time had come to close the deal. Jerry replied, "That is very good. It will work out. I will put a little more effort and try to get more money to make a better showing on the down payment and see if we can get the price down a little." Jerry asked the plaintiff to find out what the other terms would be if a larger cash payment should be made. When the plaintiff asked Street, Street answered, "Just submit the offer." But Jerry made no new offer through the plaintiff or directly to Street. The plaintiff talked with Jerry on the telephone a number of times between that date and April 2, 1942, and Jerry assured the plaintiff that "we will buy" the property.

The final negotiations for the purchase were conducted by Jerry and Felix Orlandella through a real estate broker named Spitz, and not through Street but directly with Prudential. Street knew nothing of the negotiations until they had been completed and a contract dated March 16, 1942, had been signed by the purchasers and left with Prudential on the same day to be signed by Street. The property had never been listed with Spitz until, about March 9, 1942, he went directly to Prudential and obtained a listing. He never knew essential details about the property. He never showed the property to the purchasers, and so far as the record discloses never saw it himself. As early as March 13, 1942, the purchasers made their first offer for the property through Spitz. Jerry did not see the property in March, 1942, and Felix Orlandella, who had never seen it before, saw it but once and was alone at the time. The contract contained a certificate signed by the purchasers that they "have not been shown this property by any real estate broker with the exception of Marx Spitz." Street signed the contract on behalf of Prudential on March 16, 1942. The title was transferred in accordance with the contract on April 7, 1942. Prudential not only paid Street for its services, but also paid Spitz a commission of $7,400, of which, pursuant to an agreement with the purchasers, he retained only $1,025, and turned the remainder over to

the purchasers. The plaintiff received nothing, and knew nothing about the sale until afterwards.

The cases were reported to this court upon the stipulation of all parties (a) that "if a finding [for the plaintiff] is warranted by the evidence . . . against the individual defendants, or either of them, judgment shall be entered in the case of Corleto against the individual defendants in the sum of $6,375 with interest at 6% from the date of the writ," and (b) that "if the evidence . . . warrants a finding against the corporate defendants, or either of them, judgment is to be entered for the plaintiff in the case against the corporate defendants in the sum of $7,400 plus interest at 6% from April 17, 1942."

The act of Street in listing the property with the plaintiff was the act of an agent and known by the plaintiff to be such, and that act was duly authorized by the principal, Prudential. That being so, if the plaintiff earned a commission, he is entitled to judgment against Prudential, and against no other defendant. If the plaintiff failed to earn a commission, none of the defendants is liable. *Shapiro* v. *Segal,* 316 Mass. 556. In any view, judgment is to be entered on the verdicts in favor of every defendant except Prudential. We proceed to consider whether the evidence warranted a verdict against Prudential.

The applicable law presents little difficulty. Prudential, by listing the property with the plaintiff without stating a price, made him a unilateral promise to pay him a commission if he should succeed in becoming the efficient cause of accomplishing its specified object (*John T. Burns & Son, Inc.* v. *Hands,* 283 Mass. 420, 422, 423; *Maher* v. *Haycock,* 301 Mass. 594, 596), whether that object was the procuring of a customer able, ready and willing to buy upon terms that Prudential might choose to accept (*Haney* v. *Beaton,* 314 Mass. 677; *Church* v. *Lawyers Mortgage Investment Corp. of Boston,* 315 Mass. 1) or the effecting of an actual transfer of title upon such terms. *Ballou* v. *United Button Co.* 241 Mass. 457, 461, 462. Upon either view, no commission would be earned until Prudential and the prospective purchasers had agreed on terms. *Madden* v. *Hurley-Driscoll Building*

*Co.* 276 Mass. 217.  *Cramer* v. *Wood,* 302 Mass. 161, 164.
*Shapiro* v. *Segal,* 316 Mass. 556.  *Manning* v. *Springfield
Institution for Savings,* 317 Mass. 480, 482.  Prudential and
the customers interested in the property by the plaintiff not
only agreed on terms but also effected a conveyance.  If the
plaintiff was the efficient cause of that conveyance, he is
entitled to a commission.  *Cohen* v. *Ames,* 205 Mass. 186.
*Waters* v. *Pacific Wool Products Co.* 268 Mass. 83, 86, 87.
*Glassman* v. *Barron,* 277 Mass. 376, 381.  *Sherman* v. *Briggs
Realty Co.* 310 Mass. 408.  *Berwin* v. *Cable Raincoat Co.* 311
Mass. 483, 487, 488.

It could not be ruled as matter of law that the plaintiff
was not the efficient cause merely because he was not present
at the execution of the contract or of the deed, and knew
nothing about them until afterwards, nor because the final
terms differed from those proposed during his negotiations;
nor because Prudential paid a commission to Spitz possibly
in ignorance of the importance of the plaintiff's services.
Brokers have recovered commissions even where they took
no part in the negotiations, never saw the purchaser, and did
nothing except advertise the property.  *Provost* v. *Burgin,*
287 Mass. 273, 275.  *Holton* v. *Shepard,* 291 Mass. 513, 516.
*Kacavas* v. *Diamond,* 303 Mass. 88.  *Green* v. *Warren Insti-
tution for Savings,* 312 Mass. 307.  *Blood* v. *Jenkins,* 312
Mass. 691.  *Haney* v. *Beaton,* 314 Mass. 677.  *Libby* v.
*Ivers & Pond Piano Co.* 317 Mass. 478.  On its facts the
present case is reminiscent of *Green* v. *Warren Institution
for Savings,* 312 Mass. 307, and *Shapiro* v. *Segal,* 316 Mass.
556.  It could not have been ruled as matter of law that the
efforts of the plaintiff had ended in failure and that new
efforts by Prudential or Spitz were the efficient cause of the
sale.  An inference could have been drawn from the evi-
dence that the efforts of the plaintiff and not those of Spitz
were the efficient cause of the sale, and that Spitz was
brought into the matter by the purchasers after they had
decided to buy merely in order that Spitz, by pretending to
effect the sale, might collect a commission and divide it with
them.

In accordance with the stipulation, judgment is to be en-

tered for the plaintiff against Prudential in the sum of $7,400, plus interest from April 17, 1942, and costs. Judgment in favor of the other defendants is to be entered on the verdicts.

*So ordered.*