WILLIAM A. O'MALLEY *vs.* ALFRED MARKUS & another.

Middlesex.    October 6, 1959. — December 7, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, &
WHITTEMORE, JJ.

*Broker,* Commission.

In an action by a real estate broker to recover a commission, evidence
that the defendant had authorized the plaintiff to act as broker in
offering to sell his garage to a specified business company, that within
a short time the plaintiff's activities resulted in a wish on the part of
the company to lease the property, that the defendant decided to
lease it and authorized the plaintiff to negotiate a lease and promised
to pay him a commission if he could "make a good deal for" the de-
fendant, that little more remained to be done to fulfill that condition
when the defendant falsely told the company that the plaintiff had
not been authorized to lease the property and that the company should
do business with the defendant, and that, although the company
thereafter lost interest in the property for a short time, it eventually
took a lease of it from the defendant following extended negotiations
in which the plaintiff tried but was unable to participate, warranted
a finding that the defendant in bad faith prevented the plaintiff's ful-
fillment of the defendant's condition and warranted a finding for the
plaintiff.    [768–770]

Evidence in an action by a broker to recover a commission in connection
with a leasing of the defendant's premises warranted a finding that the
plaintiff acted properly and solely in the interest of the defendant to
"make a good deal for him," notwithstanding testimony by the plain-
tiff that he "did not tell . . . [the defendant] that he represented the
. . . [lessee], but . . . [the defendant] knew he did."    [770–771]

CONTRACT.    Writ in the Superior Court dated June 18,
1955.

The action was tried before *Morton, J.*

*John F. Donohoe,* for the plaintiff.

*Arthur L. Eno, Jr., (James P. Cassidy* with him,) for the
defendants.

WHITTEMORE, J.    This action is for a broker's commission
in connection with the leasing of the defendants' premises on
Hurd Street, Lowell, formerly a garage and repair shop, to

the New England Telephone and Telegraph Company (the company), for use as a business office. This is the plaintiff's exception to the direction of a verdict for the defendants. We state the facts as favorably for the plaintiff as the jury could have found them on the plaintiff's testimony and other evidence. It does not appear that the defendants testified.

An agreement for extensive remodelling of the building and for a lease was executed between the defendants and the company on March 21, 1955, after extended negotiations. The plaintiff, having been authorized by the defendant Markus on March 24, 1954, to act as broker in offering the property to the company, for its purchase, was active in April with the result that the company inspected the location, found it good, but decided that it wished to lease. On April 21 Markus and the plaintiff discussed the prospects of a deal and whether Markus would sell or lease; after reflection Markus changed his mind, decided to lease and widened the plaintiff's authority to include leasing. Markus asked the plaintiff what his commission would be "if he leased the premises" and when the plaintiff replied "the regular fee" Markus said "that was all right if the plaintiff could make a good deal for him." Although the plaintiff thereafter tried to participate in what went on, such efforts as he made did not bring him into the negotiations.

A contributing cause of the exclusion of the plaintiff was a false statement made by Markus in a conversation between him and the company's representative, Oliver K. Hulsey, on April 23, 1954, when Markus telephoned the company. Hulsey reaffirmed that the company wished only to lease and asked whether he should do business with Markus or with the plaintiff. Markus replied that Hulsey should do business with Markus "since the plaintiff had been authorized to sell, but not to lease, the property."

Another cause of the plaintiff's remaining on the outside of the trade was information which came to the plaintiff in late April. He called the company on April 28 and was told by Hulsey that "Markus had called . . . direct" and that

the plaintiff should call him to find out what he had been told. The plaintiff then "got the impression that the telephone company was not interested in the property." He also heard from Markus that this was so on April 30. Markus then told the plaintiff, in response to the latter's inquiry, that he had gone over the plaintiff's head because he was impatient to find out what was going on. On May 11 Hulsey said by telephone to Markus that the company was again interested in the property, but the plaintiff did not learn of this statement.

The plaintiff's lack of zeal in his own interest was a relevant factor at least after about May 18. On that day he heard from a friend that Markus was negotiating with the company. He "did not contact Markus, but tried in vain to talk to Mr. Hulsey, who was not in his office at the time. It was not until August 11, 1954, when . . . [the plaintiff] heard that Markus was getting figures for remodelling the garage, that the plaintiff was able to verify that Markus was negotiating with the company." He then telephoned Hulsey who refused any information. On that day Markus told him he had made no decision on leasing the property to the company. On October 4 "the plaintiff called Markus who practically refused to talk to him." On October 6 the plaintiff saw Hulsey who did not give the plaintiff much information but told him he thought he had earned a commission. On November 10 Markus told the plaintiff he would pay him a commission when the lease was signed. On November 26 Markus told him he did not owe him a commission and did not want to talk to him.

There was evidence of the regular fee for leasing.

Other evidence is stated in sections 2 and 3 of the opinion.

1. The case against Markus should have been submitted to the jury for it could reasonably have been found that Markus in bad faith so interfered with the plaintiff's efforts as to prevent his performance of the condition of Markus's authorization to him. *O'Connell* v. *Casey*, 206 Mass. 520, 528–529. *Leitner* v. *Foster*, 280 Mass. 128, 134–135, 137.

*Winchester* v. *Erickson,* 281 Mass. 210. *Chisholm* v. *Mc-Carthy,* 325 Mass. 72, 74–75. *Malloy* v. *Coldwater Seafood Corp.* 338 Mass. 554, 562–563, and cases cited. Compare *Cadigan* v. *Crabtree,* 186 Mass. 7, 13; *Elliott* v. *Kazajian,* 255 Mass. 459, 462; *Brooks* v. *Gregory,* 285 Mass. 197; *Kazavas* v. *Diamond,* 303 Mass. 88. For cases where the broker could have been found the efficient cause notwithstanding interference, see *Waters* v. *Pacific Wool Prod. Co.* 268 Mass. 83, 87; *Glassman* v. *Barron,* 277 Mass. 376, 381; *Corleto* v. *Prudential Ins. Co.* 320 Mass. 612, 617; *Siegel* v. *Lowe,* 327 Mass. 154.

The jury could have found that, as the event proved, very little more was required of the plaintiff on April 23 when the false statement was made to enable the plaintiff to fulfill the condition of making "a good deal for" Markus. The jury were not obliged to conclude that this condition required that the plaintiff relieve the owners of the burden of extensive participation in the inevitable negotiations of lease terms and for the necessary changes in the building. We assume that something more was required than in the usual case where the broker, engaged to find a customer to meet the owner's terms, is under no duty whatever to see to the making of the contract. *Fitzpatrick* v. *Gilson,* 176 Mass. 477, 479. *O'Connell* v. *Casey,* 206 Mass. 520, 529. *Green* v. *Warren Inst. for Sav.* 312 Mass. 307. *Chisholm* v. *McCarthy,* 325 Mass. 72. But on the assumption stated, if after May 11, 1954, the plaintiff had continued as opportunity offered to convey information between the company and Markus, arrange their meetings and make suggestions in respect of the negotiations as they occurred to him, it could have been found that he had met the requirement to "make a good deal." It could have been found on the evidence that, had Markus told Hulsey on April 23 that the plaintiff had authority to act in respect of leasing, the company would have kept in touch with him, would have responded differently on April 28, and would have called him on May 11, and that had this been the course of events

in April and May, 1954, the plaintiff would have had the necessary part in subsequent events.

The plaintiff's important acts before Markus decided to lease are not to be disregarded in determining the plaintiff's right to a commission. There had been on April 21 no break in the agency relationship and the jury could have found that the offer then made contemplated that what the plaintiff had already done was to be part of making a "good deal" by way of lease. Compare *Field* v. *Hamm*, 254 Mass. 268, 270.

The jury were not obliged to find that acts or omissions after April 23 made inconsequential Markus's statements on that day. Markus never attempted express revocation of the offer to the plaintiff. There is no evidence that the plaintiff knew of Markus's denial of his authority on April 23. We need not pause to decide the effect of a two weeks' break in the company's interest in the property had Markus expressly, but in bad faith, revoked the plaintiff's authority prior to April 27. In the circumstances it is unimportant whether the jury believed the uncontradicted testimony that the company was interested only in another property from April 27 to May 11. There is no evidence that Markus took the property off the market in that period. A lapse in the interest of a prospective customer for a short time does not require the conclusion that the owner has revoked a broker's authority. With contrary implication, it could be deemed one of the possibilities with which a broker, having authority to try for a trade, is expected to deal. Compare *Glendon* v. *Pyne*, 275 Mass. 528, 530.

We need not rule whether it could have been found that the plaintiff's conduct after April 28 showed acceptance of Markus's report of the company's lack of interest as a statement that the deal was off, and a discharge of his authority. This conclusion was not required.

2. The jury were not obliged to conclude that the plaintiff was so acting for both parties that he could not collect a commission from either. *Friedman* v. *Ballard*, 250 Mass. 167. The bill of exceptions states, "On cross-examination,

O'Malley *v.* Markus.

the plaintiff testified that he was the one who originally made the contact with the defendant Markus. He did not tell Markus that he represented the telephone company, but Markus knew he did." There was no prior testimony suggesting that the plaintiff was the company's agent. "The plaintiff further testified, under cross-examination, that he thought he had told Mr. Hulsey that the telephone company would be liable for a commission. He doesn't remember having asked a commission from the company but might have said to Hulsey that the company would be liable for a commission if they did business directly with Markus. He did go to see the president of the telephone company to have him make Markus pay the plaintiff a commission when the lease was signed." Hulsey's testimony on the subject tended to confirm the plaintiff's. On direct examination the plaintiff had testified that he understood that the company was looking for a new location and went to Markus. He told the company representative that if the defendants would not consider leasing "he had a man who would be glad to buy the property, renovate it and lease it to the company." The jury could have found that the plaintiff told Markus of this talk. Whatever the words "represented the telephone company" referred to, the jury could have found that the plaintiff, to the extent that he had the opportunity, acted properly and solely in the interest of the owners to make a trade for them.

3. The plaintiff testified that he never had any dealings or conversations with the defendant Runton. There was no contrary evidence and the direction of a verdict was proper as to him. See *McInnes* v. *Stuart*, 267 Mass. 212, 216–217.

*Exceptions sustained.*

*Judgment on the verdict for the defendant Runton.*