THEODORE W. SECKENDORFF, Respondent, *v.* HALSEY, STUART & Co., INCORPORATED, Appellant, Impleaded with Others.

354

(Argued May 13, 1932; decided July 19, 1932.)

*Edward K. Hanlon, Morton G. Bogue* and *James C. Stephens* for appellant. The plaintiff failed to prove any agreement by the defendant-appellant. (*Benedict* v. *Pell,* 70 App. Div. 40; *McVickar* v. *Roche,* 74 App. Div. 397; *Meltzer* v. *Flying Fame, Inc.,* 224 App. Div. 41; *Rait* v. *Carpenter,* 78 Misc. Rep. 385; *Catholic Foreign Mission Society* v. *Oussani,* 215 N. Y. 1; *McIlrath* v. *Waterbury & Sons Co.,* 193 App. Div. 491.)

*George Gordon Battle, Benjamin F. Spellman, Ludlow S. Fowler* and *Pearson E. Neaman* for respondent. The plaintiff established an agreement by defendant-appellant and the jury were justified in so finding. (*Haynes* v. *Aldrich,* 133 N. Y. 287; *Farrel* v. *Woodward,* 101 Misc. Rep. 560; *Logan* v. *Davidson,* 18 App. Div. 353; 162 N. Y. 624; *Nassoiy* v. *Tomlinson,* 148 N. Y. 326; *Fuller* v. *Kemp,* 138 N. Y. 231.)

O'BRIEN, J.   Plaintiff was employed as a solicitor for financial advertisements on a New York newspaper and, although not engaged in the real estate business, he had acquired extensive knowledge relating to it in the city of Washington.  He spent part of his time finding and originating business for Wall Street houses in return for compensation to be paid to him by them.  He brought people into contact.  Meeting Gustave Nassauer, a real estate operator, who sought financial assistance in a large undertaking, he arranged in Nassauer's behalf to approach investment houses in New York for the purpose of obtaining aid in the acquisition by Nassauer of eight valuable parcels of real estate in Washington, five of which were owned by the Wardman interests and three by others. An inference of fact is permissible that plaintiff's functions in this transaction did not consist in formulating fiscal devices but that his main efforts were directed toward producing business for some investment house which, for its advantage as well as his own, would be willing to make provision for obtaining funds for the organization of a corporation to promote the transfer and consolidation of these properties.  In November, 1926, Nassauer and plaintiff called upon defendant Rogers Caldwell and Company, Inc., and, after some negotiation, that corporation arranged a plan for the consolidation of the interests in the Wardman and other properties and for financing them.  The scheme related to "so called Wardman properties" as later described by Rogers Caldwell and Company.  On March 8, 1927, the project was thought to be favorably progressing and on that date Mr. Weber, the vice-president of Rogers Caldwell, wrote to plaintiff this letter:

" We are pleased to advise you that we, together with such associates as we may select, are interested in considering the proposed financing of the consolidation of so-called Wardman properties in Washington, D. C., which you brought to our attention.

" In the event of our financing the same, we and our associates will pay you as an originating commission 1% of the par value of such securities of the consolidated company as we may purchase for distribution to the public, and 2% of any securities of the consolidated company we may receive as bonus for handling the transaction. The payments referred to are to be made to you upon termination of such syndicate as we and our associates may form.

" It is understood, however, that if the deal should not materialize or should we decide for any reason whatsoever not to proceed therewith, we shall not be liable to you for the payment of any commissions whatsoever."

The vice-president of Rogers Caldwell, at plaintiff's suggestion, conferred with defendant Halsey, Stuart and Company, Inc., which exhibited enough interest in the proposed plan so that it assigned one of its employees, Mr. Reeve, to examine and discuss it. His report was unfavorable, in the opinion of Halsey Stuart, and that house declined, under the plan as outlined at that time, to participate. That particular scheme was abandoned. Some months later, however, Halsey Stuart joined with others in a substituted plan, which, from the evidence, the jury could find was a substantial revival, but with unlike details, of the original one. Later Rogers Caldwell was admitted to participation. In it Nassauer bore no part. New parties became interested and proposals and acceptances relating to particular methods of financing the " so-called Wardman properties " varied during the interval extending from the time of plaintiff's introduction of the business to Rogers Caldwell until consummation of the enterprise in September, 1928, by Halsey Stuart and these other defendants. The outcome of the deal was the purchase by Halsey, Stuart and Company of $11,000,000 first bonds in one and $2,500,000 debentures in another of the newly-organized Wardman corporations and the allotment by it to Rogers Caldwell of a one-eighth inter-

est in its share.  We think that there is some evidence which may be held to support the jury's inference that the ultimate financing of this consolidation, which in form was not the same as originally proposed by Rogers Caldwell but in which by a vast preponderance Wardman properties were involved, essentially resulted, within a reasonable time, from plaintiff's act in bringing the business to defendants, constitutes in general such an operation as was contemplated by the letter of March 8, 1927, and that Halsey Stuart, although finally participating in a larger degree than Rogers Caldwell, was an associate within the meaning of that letter.  Tracing a connection between plaintiff's introduction of the business and the termination of the entire transaction was for the jury's consideration, and although it might have otherwise decided, its conclusion cannot be said as matter of law to have no basis.  In the light of the evidence forming foundation for the verdict, that agreement must be deemed to uphold this judgment as against Rogers Caldwell.  No appeal by that defendant is before us.

In respect to appellant Halsey, Stuart and Company, the court charged that plaintiff could recover against it only on proof that it agreed to pay the compensation provided for in the letter of March 8.  The question is whether any evidence tends to support the verdict importing this defendant's acceptance or ratification of that agreement.  Knowledge, without some manifestation of dissent, by Halsey Stuart of this document would furnish a basis for an inference of assent.  There must be some evidence, however, that notice of the existence of this letter was brought to the attention of some one connected with Halsey Stuart who was empowered to act upon it or that in some other way the fact was known to it that plaintiff had this contract.  We can find none which can warrant even an inference of such knowledge.  Reeve, a subordinate employee of the corporation, saw and commented upon the letter but he was without

authority to accede to its terms and there is not the slightest proof that any one else attached to appellant ever heard of it. Its vice-president denied positively that Reeve ever mentioned the matter to him and he testified that he never in his life had seen plaintiff. This verdict can result only from conjecture.

The judgments should be reversed and the complaint dismissed as against this appellant, with costs in all courts.

POUND, Ch. J., KELLOGG, HUBBS and CROUCH, JJ., concur with O'BRIEN, J.; CRANE and LEHMAN, JJ., concur in the result because there was no evidence to warrant a jury in finding that Halsey, Stuart & Co. put through the proposition originally submitted to them.

Judgments reversed, etc.