Burton J. De Fren, Respondent, v Thomas J. Russell, Jr., et al., Appellants.

First Department, December 18, 1979

APPEARANCES OF COUNSEL

*Conor D. Reilly* of counsel (*James M. Rhodes* and *Charles E. Bachman* with him on the brief; *Coudert Brothers,* attorneys), for appellants.

*Floran L. Fink* of counsel (*Stephen M. Charme* with him on the brief; *Robinson Silverman Pearce Aronsohn & Berman,* attorneys), for respondents.

### OPINION OF THE COURT

Murphy, P. J.

■ On a motion for summary judgment, the court must search the proof, as proffered by affidavits or otherwise, to ascertain whether it discloses a real rather than a perfunctory issue (*Schillinger v North Hills Realty Corp.,* 15 AD2d 539, 540, affd 11 NY2d 1044). Plaintiff De Fren submitted his own affidavits and other proof in support of his cross motion for

partial summary judgment on the first and second causes of action for a finder's fee of $75,000. However, defendants Russell and Bio-Dynamics did not lay bare their proof in opposition to that portion of the cross motion. *(Di Sabato v Soffes,* 9 AD2d 297, 301.) Neither of those defendants submitted affidavits or other proof that would effectively contravene plaintiff's proof on the first two causes of action. The affidavits of their counsel were without probative value *(Di Sabato v Soffes, supra).* Consequently, the operative facts on the cross motion may be drawn from plaintiff's papers and may be briefly stated.

Plaintiff De Fren and defendant Russell, individually and as president of Bio-Dynamics, Inc., entered into a letter agreement, dated March 4, 1969. To the extent here relevant, the letter agreement provides:

"This letter is to confirm our understanding in which we have agreed to the following:

"1. We shall endeavor and have endeavored to consummate the acquisition of all of the stock of Bio/Dynamics, Inc., by purchase, merger, reorganization, underwriting and/or any other relationship which we may bring about between Bio/Dynamics, Inc. and any other individual or individuals and/or corporation or corporations which is agreeable to you and your company. In addition we agree to perform ancillary legal services for you and your company in connection therewith.

"2. In consideration of the above services to be rendered by us, upon the consummation of a binding agreement as described above, we are to receive a legal fee for services rendered, of $75,000.00 plus any out-of-pocket disbursements made for the benefit of you or your company. The method and manner of such payment shall be worked out between us prior to and as a condition precedent to any such consummation.

"3. As of the date of this letter, it is agreed by you and your company that the consummation of any relationship described in Paragraph #1 with or through Revlon, Inc. and/or one of its subsidiaries, Shulton, Inc., and/or one of its subsidiaries, Greene & Co., and/or one of its affiliated firms, Loeb, Rhoades & Co., and/or one of its affiliates, McMahon, Lichtenfeld & Co., and/or one of its affiliates, Plough, Inc., and/or one of its subsidiaries, and any other corporation and/or individuals which we introduce to you hereinafter, shall be deemed to fall within the purview of this agreement."

On or about March 4, 1969, plaintiff introduced Russell to

Peter Dixon, a representative of Loeb, Rhoades. Thereafter, plaintiff and Dixon assisted Russell in his efforts to sell the Bio stock. In the early part of 1970, Russell told De Fren that he was going to sell the Bio stock on his own. In fact, that private transaction was never consummated. Unknown to plaintiff, Russell then continued to work closely with Dixon in an attempt to sell the stock until the fall of 1972.

Dixon had introduced Russell to Joseph Grossman, a founding stockholder of Lea, Inc. Grossman, in turn, introduced Russell to Frank Osgood, Lea's president. Various conversations and meetings were had concerning Lea's possible acquisition of Bio. However, Russell was apprised of the fact that defendant IMS International, Inc. might acquire Lea in the interim. During negotiations with Lea, Dixon told Russell that, even if IMS acquired Lea, it was still possible that IMS might also acquire Bio. Toward the end of 1972, IMS did acquire Lea. In the early months of 1973, Osgood introduced Russell to Randall Evans, an officer in IMS. Russell then excluded Dixon from the negotiations between IMS and Bio. On March 27, 1973, IMS acquired Bio.

■ After plaintiff made the initial introduction of Russell to Dixon, there was a long series of introductions culminating in Russell's introduction to Evans by Osgood. This chain of introductions does not preclude an award of summary judgment to plaintiff if recovery is warranted within the terms of the letter agreement.

In 1970, Russell deceived the plaintiff into believing that the letter agreement had terminated. Therefore, Russell cannot validly argue or complain that the plaintiff did not "consummate" the acquisition in 1973. The more narrow question thus presented is whether plaintiff is entitled to recover on the basis of Loeb Rhoades' efforts on Russell's behalf.

The third paragraph of the letter agreement provided that the consummation of the acquisition "with" or "through" Loeb, Rhoades would fulfill the terms of the agreement with regard to plaintiff's expected performance thereunder. In this record, there is not the slightest indication that Russell would have even become aware of the existence of IMS except "through" the diligent services provided by Dixon over a three-year period. It must be further stressed that, during the unsuccessful negotiations with Lea, Dixon had identified IMS as a potential purchaser of Bio. In this background, Russell's eleventh hour exclusion of Dixon from the IMS negotiations

does not show any independent initiative on his part that would relieve him of his obligation to plaintiff under the letter agreement.

In view of the fact that the Bio stock was sold to IMS through the efforts of Loeb, Rhoades, plaintiff is entitled to recover a finder's fee of $75,000 under the first cause of action. Since recovery is being awarded on the first cause for breach of contract, the second cause of action to recover the reasonable value of plaintiff's services is dismissed as academic.

The principles enunciated in the opening paragraph of this decision equally apply to plaintiff's cross motion for partial summary judgment against defendant IMS on the first and second causes and defendant IMS' motion for summary judgment dismissing those causes as against it. Andrew Clark, a vice-president of IMS, submitted affidavits in support of his company's motion to dismiss the complaint as against it and in opposition to plaintiff's cross motion for summary relief. Clark stated, *inter alia,* that Bio never merged with IMS. He emphasized that IMS was solely a holding company while Bio was in the business of chemical and biological testing. Clark further averred that Russell was still running Bio. He stated that there had been no commingling of the assets of IMS and Bio. Clark did admit, however, that he also served as a vice-president of Bio. In his affidavits, plaintiff did not challenge the accuracy of any of the facts stated in Clark's affidavits.

■■ Save for the fact that Clark happened to be a vice-president of both IMS and Bio, the record is devoid of any competent proof tending to establish a merger of IMS and Bio. A triable issue as to merger is not raised by the threadbare fact that two corporations happen to have a common officer. The real question posed is whether IMS, in acquiring Bio, agreed to be responsible for Russell's obligations under the letter agreement. Paragraph 12 of the "Plan and Agreement of Reorganization" between IMS and Russell specifically provides as follows: "12. Each party represents that he has not employed any agent or broker in connection with the transaction contemplated herein. In the event any IMS, Lea, Newlea or White, Weld & Co. employee, stockholder, or consultant or any person contacted by such parties should claim any compensation or commission from Russell or B/d as a finder's or brokerage fee, IMS agrees to indemnify and hold him harmless with respect to any such claim unless it is established that such person making such claim was employed by Russell

as an agent or broker in connection with the transaction contemplated herein." In light of the fact that plaintiff was employed by Russell under the letter agreement, paragraph 12 specifically exempts IMS from any liability with regard to the finder's fee. Contrary to plaintiff's contention, there is no need to hold a hearing to determine Clark's intentions in executing the "Plan and Agreement of Reorganization". That document is unambiguous and speaks for itself. Moreover, the plaintiff has not demonstrated that he has standing to challenge an agreement with which he has no privity.

For the reasons stated, the order of the Supreme Court, New York County (RUBIN, J.), entered March 12, 1979, which, *inter alia,* granted plaintiff's motion for summary judgment on the first and second causes of action, should be modified, on the law, by dismissing the second cause of action and by dismissing the complaint as against IMS, and as modified, the order should otherwise be affirmed, without costs. The judgment of the Supreme Court, New York County (RUBIN, J.), entered March 14, 1979, which awarded plaintiff $102,070 against defendants Russell and Bio, should be modified, on the law, by deleting so much of the recital paragraph as states that the order, entered March 12, 1979, directed the entry of judgment on the second cause of action, and as modified, it should be affirmed, without costs.

SILVERMAN, J. (dissenting in part). I would reverse the order appealed from insofar as it grants summary judgment to plaintiff on any cause of action.

There are at least two related issues which I think cannot be resolved in plaintiff's favor on this motion for summary judgment.

There is first the question of the meaning of the contract as to what kind and level of performance would entitle plaintiff to the fee. On its face, the contract is not unambiguously merely a kind of finder's contract entitling plaintiff to his fee if all plaintiff has done is introduce Thomas J. Russell, Jr., and Bio-Dynamics, Inc. ("defendants") to some people through whom in turn defendants met other people who in turn initiated negotiations with still other people which led to the consummated transaction four years after the original contract with plaintiff. The contract says that plaintiff "shall endeavor * * * to consummate the acquisition" that plaintiff should receive a fee "upon the consummation of a binding agreement as described above" and that the agreement should

cover the consummation with or through various named companies and "any other corporations and/or individuals which we introduce to you hereinafter". The contract refers to plaintiff's fee as a "legal fee."

The contract was drawn by plaintiff, a lawyer, and was entered into with defendant Thomas J. Russell, Jr. (a nonlawyer) who was plaintiff's client. In the circumstances, ambiguities should be resolved against plaintiff. At a minimum, there should be an opportunity for extrinsic evidence that may cast light upon the meaning of the contract.

Once the interpretation of the contract has been determined, there remains the question whether plaintiff's performance was of the kind and level called for by the contract as the prerequisite to his entitlement to a fee. Even accepting plaintiff's version of the primary evidentiary facts, there remains an issue of fact as to whether what happened here met the contractual standard. This is analogous to such questions as whether conceded primary facts amount to "reasonable care" or "proximate cause" or, in the case of brokerage agreements, "procuring cause." (cf. *Ortiz v Knighton,* 14 AD2d 679; *Connell v Buitekant,* 17 AD2d 944.)

LANE, LUPIANO and ROSS, JJ., concur with MURPHY, P. J.; SILVERMAN, J., dissents in part in an opinion.

Order, Supreme Court, New York County, entered on March 12, 1979, modified, on the law, by dismissing the second cause of action and by dismissing the complaint as against IMS, and as modified, the order is otherwise affirmed, without costs and without disbursements. Judgment of said court entered on March 14, 1979, modified, on the law, by deleting so much of the recital paragraph as states that the order entered March 12, 1979, directed the entry of judgment on the second cause of action, and as modified, affirmed, without costs and without disbursements.