18-2194-cv
*Capital Access Servs., Inc. v. Direct Source Seafood, LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of April, two thousand nineteen.

Present:
> GUIDO CALABRESI,
> DEBRA ANN LIVINGSTON,
> RAYMOND J. LOHIER, JR.,
> *Circuit Judges*.

———————————————————————————

CAPITAL ACCESS SERVICES, INC.,

> *Plaintiff-Appellant*,

> v.                                                           18-2194-cv

DIRECT SOURCE SEAFOOD, LLC, ROMAN TKACHENKO, EVERBANK FINANCIAL CORP.,

> *Defendants-Appellees*.

———————————————————————————

| | |
|---|---|
| For Plaintiff-Appellant: | RAN MUKHERJEE, (Leon Borstein, *on the brief*), Borstein Turkel, P.C., New York, NY. |
| For Defendants-Appellees Direct Source Seafood, LLC and Roman Tkachenko: | GERI S. KRAUSS, Krauss PLLC, New York, NY. |
| For Defendant-Appellee EverBank: | CRAIG L. STEINFELD, (Anthony J. Sylvester, *on the brief*), Sherman Wells Sylvester & Stamelman LLP, |

1

Florham Park, NJ.

Appeal from a judgment of the United States District Court for the Southern District of New York (Broderick, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Capital Access Services, Inc. ("CAS") appeals from the judgment of the United States District Court for the Southern District of New York, dated June 25, 2018, dismissing its breach of contract and tortious interference claims. *See* J.A. 177; *see also Capital Access Servs., Inc. v. Direct Source Seafood, LLC*, No. 17-CV-1405 (VSB), 2018 WL 3093967 (S.D.N.Y. June 22, 2018). "We review *de novo* the grant of a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6)." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). In doing so, we must assume all factual allegations in the complaint to be true and draw all reasonable inferences in favor of the plaintiff. *Id.* We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we discuss only insofar as necessary to explain our decision to AFFIRM.

**Breach of Contract**

To state a claim for breach of contract under New York law, CAS "must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns. Corp.*, 830 F.3d 152, 156 (2d Cir. 2016) (internal quotation marks omitted).[1] "At the motion to

---

[1] As the district court observed, "[t]he parties to the Brokerage Agreement apparently agree that New York law governs the interpretation of the Brokerage Agreement because they both cite exclusively to New York law." *Capital Access Servs.*, 2018 WL 3093967, at *3. There being

2

dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." *Id.* "Under New York law, a contract is ambiguous if its terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co., N.A.*, 773 F.3d 110, 114 (2d Cir. 2014) (internal quotation marks omitted).

CAS's breach of contract claim against Defendant-Appellee Direct Source Seafood, LLC ("DSS") hinges on interpretation of a clause of the brokerage agreement between the two parties, which provides as follows:

> DSS agrees to compensate CAS at the same rates and terms as those described above, for a period of twenty four months from the date of such initial closing, should any lender involved in such original funding/closing, or have been introduced to DSS through the efforts of CAS, lend to, and/or invest in any subsequent financing on behalf of DSS.

J.A. 25. CAS argues that DSS was required to pay it a commission on the $45 million credit facility funded by Defendant-Appellee EverBank ("EverBank"), as EverBank was allegedly a "lender involved in [the] original funding/closing" of an earlier $15 million credit facility that was obtained pursuant to the brokerage agreement. In the alternative, CAS argues that EverBank was "introduced to DSS through the efforts of CAS."

For substantially the same reasons articulated by the district court, we disagree. The allegations of CAS's amended complaint make clear that Hudson Valley Bank, *not* EverBank, funded and closed the original $15 million credit facility. Moreover, the fact that EverBank may

---

no argument to the contrary in the parties' briefs to this Court, we assume the same.

3

have subsequently taken over the servicing of that credit facility does not transform it into a "lender involved in such original/funding closing," and the cases cited by CAS regarding the rights and obligations of assignors and assignees are inapposite. As the district court aptly observed, "[t]hese cases do not provide support for the position that the assignment of a lender's rights in a credit facility transforms the assignee of those rights into the 'lender involved in [the] original funding/closing' for purposes of the interpretation of a brokerage agreement to which neither the assignor nor the assignee is a party and which creates no rights or obligations for either the assignor or the assignee." *Capital Access Servs.*, 2018 WL 3093967, at *4.

Similarly, we agree with the district court that, under the specific circumstances alleged here, EverBank was not "introduced to DSS through the efforts of CAS." *See Simon v. Electrospace Corp.*, 28 N.Y.2d 136, 142 (1971) (observing that a "continuing connection" between plaintiff's efforts and a subsequent merger was sufficient under the contract); *De Fren v. Russell*, 422 N.Y.S.2d 433, 436 (1st Dep't 1979) (stating that a "chain of introductions" does not eliminate a finder's fee "if recovery is warranted within the terms of the letter agreement"); *Seckendorff v. Halsey, Stuart & Co.*, 254 N.Y.S. 250, 260 (1st Dep't 1931) (requiring a showing that a final deal "flow[] directly" from plaintiff's introduction), *overruled on other grounds*, 259 N.Y. 353 (1932). Instead, "based on Plaintiff's allegations, the efforts of DSS and/or Murphy[, the Hudson Valley banker who moved to EverBank], not CAS, resulted in the introduction of EverBank to DSS." *Capital Access Servs.*, 2018 WL 3093967, at *5. Accordingly, we conclude that, based on the unambiguous language of the brokerage agreement and the amended complaint's allegations, CAS was precluded from receiving a commission on DSS's credit facility with EverBank.[2]

---

[2] In light of this determination, we need not address the district court's alternative conclusion that New York law prohibits CAS from receiving a commission as a matter of law.

4

**Tortious Interference**

Next, CAS argues that Defendant-Appellee Roman Tkachenko ("Tkachenko"), an officer of DSS, and EverBank tortiously interfered in the brokerage agreement because they caused the second credit facility's loan agreement to be executed with language to the effect that no broker was involved. As the district court rightly observed, however, given that CAS has failed to allege a breach of contract as to its brokerage agreement with DSS, there can also be no tortious interference with that contract. *See NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*, 87 N.Y.2d 614, 620 (1996) (observing that New York law "link[s] availability of the remedy [for tortious interference] with a breach of contract."). Because this definitively resolves CAS's claim, we express no opinion on the alternative grounds on which the district court also relied to dismiss CAS's tortious interference claim.

We have considered CAS's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk